ANN E. MILLER, *et al.*, Plaintiffs in Error, *vs.* REUBEN BLED-SOE, Defendant in Error.

1. *Ejectment—Failure of title in one or more plaintiffs will not prevent recovery of those showing good title—Dismissal as to co-plaintiffs, when not required.*—In a joint action of ejectment by two or more plaintiffs, under a proper construction of the statute (Wagn. Stat., 559 § 10), a failure of title in a portion of them will not prevent a recovery on the part of others who show a good title to any interest in the premises not barred by the statute of limitations or otherwise; and they cannot, in order to obtain judgment, be compelled to take a voluntary non-suit in advance, as to those who may ultimately fail to recover.

2. *Adverse possession of co-tenants under fee simple deed need not amount to ouster, when.*—The rule as to adverse possession and ouster necessary to create title under the statute of limitations, where one goes into possession of land as a co-tenant, does not govern a case where he whose title is in fact that of tenant in common, takes possession under deed of warranty for the whole tract, supposing that he takes a fee absolute, and with nothing to show the contrary.

3. *Tenancy by curtesy—Those holding under wife cannot sue for land during.*—Where one holds land as tenant by curtesy, those deriving title from his deceased wife cannot sue during his life.

4. *Warranty deed of tenant by the curtesy—Warranty must be made good by his heirs, when.*—Where one conveys, by a warranty deed, land in which he is only tenant by the curtesy, his heirs must make his warranty good, if they have assets by descent from him of equal value with the land.

*Error to Franklin Circuit Court.*

*R. H. Musser, with E. McElhinney,* for Plaintiffs in Error.

I. The testimony goes to show a tenancy in common between plaintiffs and defendant, which would continue till an ouster; and till then no right of action accrued. As to what constitutes ouster between tenants in common, instruction No. 5 for defendant correctly declared the law, and is sustained by Paul vs. Lepeyre (47 Mo., 557).

Defendant took Hendricks' deed with record notice that Hendricks held under Alton Long, and he took nothing but Long's life estate.

There could have been no ouster as to James or his grantors till the right of entry accrued, which would not be the case till Long's death.

There is no proof of actual knowledge on the part of plaintiffs that defendant claimed an exclusive ownership, especially as against them; nor of acquiescence by them in any claim of disseizin by defendant for more than ten years.

II. Under the present statute (Wagn. Stat., 559, § 10) supposing that some of the co-tenants of plaintiff may have slept on their rights, and are barred by the statute, that fact will not compel a verdict against the co-plaintiffs not so barred, as the instructions required the finding to be. The case of Keeton's Heirs vs. Keeton, (20 Mo., 538) was prior to the enactment of the statute referred to, but decided nothing contrary to the above proposition. Nor did the case of Walker vs. Bacon (22 Mo., 144).

The real test of the right of any plaintiff in this case to recover is not, whether his co-plaintiff fails in his proof, or is suing on a cause of action he has too long neglected, and to recover rights the law presumes he has abandoned; but is it such a cause of action as he could have recovered on if he had brought a suit singly and alone?

In the face of this statute, if the ruling below is sustained, there will be no safety in bringing a joint action when there are many plaintiffs, for fear some of them may fail to recover or be barred by limitations, and the primary, original object and purpose of the act of March 13, 1849, will be defeated. Safe pleading will require, that each plaintiff sue separately; and, in the case at bar the defendant must be harassed with some twenty law suits instead of one, when the manifest purpose of the law—Act of March 12, 1849—was, to prevent multitudinous and circuitous litigation.

*A. J. Seay, Crews & Halligan.* for Defendant in Error.

The statute of limitations began to run in favor of Hendricks and those holding under him, from the time he took possession under his warranty deed, claiming the land as his, *i. e.*, from November, 1851, and not from date of the patent, in 1856. Plaintiffs' right of entry accrued in 1847, when the

land was entered by them, and their cause of action accrued the moment Hendricks entered under the Long deed. Then the statute commenced running.

Part, at least, of plaintiffs are barred by it, and as to them plaintiffs should have dismissed. (Keeton vs. Keeton, 20 Mo., 530; Walker vs. Bacon, 3 Mo. 144; Ang. Lim., § 484 and notes; Primm vs. Walker, 38 Mo., 94; 10 Geo., 218; 7 Cr., 156.)

The 8th instruction given for defendant presented the law on the question of ouster as favorably as plaintiff could ask. (3 Washb. Real Prop., pp. 134–5; Ang. Lim., §§ 390, 429; Tyl. Ej., pp. 84, 874–5, 882.)

Neither defendant nor Hendricks were ever tenants in common with plaintiffs. Admit that Alton Long was so, he gave an absolute warranty deed without anything showing that plaintiff had an interest. Hence, defendant's possession was adverse to plaintiffs. (Bogardus vs. Trin. Church, 4 Paige Chy., 178; Jackson vs. Brick, 5 Cow., 483; 3 Watts, 77; Ang. Lim., § 532.)

To consummate Alton Long's curtesy, his wife must have had possession, and not merely the right of possession. (3 Bouv, L. D., 580; Mercer vs. Seldon, 1 How. N. S., p. 37; Washb. Real. Prop., t. p. 148; Reaume v. Chambers, 22 Mo., 36.)

NAPTON, Judge, delivered the opinion of the court.

This is an action of ejectment to recover forty acres of land in Franklin county. There are twenty plaintiffs, who claim to represent Richard Caulk. The suit was brought on the 16th of March, 1870, and the principal defense was the statute of limitations.

The plaintiffs gave in evidence a patent from the United States, dated June 3, 1856, to Richard Caulk or his legal representatives, and to his or their heirs. This patent recited certificate No. 35 of the Surveyor General at St. Louis, whereby it appeared that the claim of Richard Caulk, or his legal representatives, is entered in the first class of the deci-

sion of the Board, under the acts of July 9, 1832, and March 2, 1833, and that after a survey No. 3,056 had been executed for said claim, it was found that 2,673 $\frac{57}{100}$ acres was interfered with by prior claims and locations, and by virtue of the second section of the act of July 4, 1836, the confirmee was entitled to locate other lands in lieu thereof, and that certain other lands had been located, (describing them) and this patent conveys the re-located lands including the one now in controversy. The plaintiffs then establish themselves to be heirs of Richard Caulk.

The defendant was then called, who said he was first apprised of this claim in 1869.

Deeds from the heirs of Sally Long, daughter of Richard Caulk, to the plaintiffs were then read.

It is unnecessary to notice the titles of Ann E. Miller, Laura P. Orr, Jannette Smith and several other plaintiffs, or the facts which might become important in deciding whether they were barred by the statute of limitation or not, as the case was decided on another point.

Lewis James, one of the plaintiffs, derives his title from the children of Alton Long, and his wife, Sally, who was, as heretofore stated, a daughter of Richard Caulk. Sally Long died in 1849, leaving five children, all of whom survived Alton Long, the father, except one. Alton Long died in 1864.

Alton Long made a deed of bargain and sale, with the usual warranty implied by the statute, in 1851, to one Hendricks, for the land in controversy. Hendricks made a deed to defendant on January 15, 1853, and the defendant went into possession then, cultivated and improved the tract, and never heard of any claim until a year or so before this suit was brought.

The tract book in Franklin county showed this land to have been a part of the lands re-located by Richard Caulk's representatives.

The instructions to the jury on the trial were substantially these:

The first instruction asked and given was, that no adverse possession prior to the patent would avail defendant.

The second instruction was, in substance, that although the legal title was in the United States until June 3, 1856, yet the rights of the heirs of R. Caulk, as tenants in common and by curtesy attached in the equitable and inchoate title from and after the entry and certificate of new location on August 31, 1847. This was also given.

The fourth instruction asked by the plaintiffs and given, was this:

"If the jury believe from the evidence that Alton Long married the daughter of Richard Caulk, the original grantee of the land in controversy; that Richard Caulk died before his daughter, the wife of said Long, leaving six surviving children, and that Mrs. Long, the daughter by said Caulk, died in the year 1848, after children being born of said marriage, then at the time of the conveyance by Long to Hendricks, read in evidence, Long was a tenant by the curtesy of the interest of his said wife in the premises in controversy, and as such was a tenant for life, and tenant in common with the other heirs of Richard Caulk, then living, in the inchoate title therein."

The conveyance of Long to Hendricks was in 1851, and the court gave instruction 5, which is this: "The presumption of the law is, that the possession of one tenant in common is the possession of his co-tenants; yet one tenant in common may oust his co-tenants and hold adversely. To constitute an ouster, therefore, between tenants in common, there must be outward acts of exclusive ownership, of an unequivocal character, overt and notorious, and of such a nature as by their import to impart information and give notice to the co-tenants that an adverse possession and an actual disseizin is about to be asserted against them."

And the court gave this further instruction for plaintiffs: that "although one tenant in common may take possession of the entire premises and hold the same during the entire period of limitation, and pay taxes and make improvements on the same, yet these acts are not of themselves inconsistent with a general holding and may be explained; and the facts

that the lands held in common are what is denominated 'wild lands, and lying in detached parcels and in different counties in this State, and many of the owners of the fee being married women during the whole time, and others minors, are all legitimate subjects of inquiry in determining whether an actual ouster has been made, and the common holding revived more than ten years before suit."

The court gave this further instruction on this point: "The jury are instructed that the legal effect of the conveyance from Alton Long to Hendricks, read in evidence, was to convey to the grantee therein, the life estate by curtesy in one undivided sixth part of the premises that the said Long acquired by virtue of his marriage and children born of the said marriage with Sally Caulk, and also the undivided one hundred and fiftieth of the premises that said Long inherited as heir at law to his deceased child and to the inchoate title that the heirs of Richard Caulk then had, and that this is the entire amount of paper title that the defendant holds in the premises."

The court refused to give the following instructions asked by plaintiff:

1. "If the jury believe that Ann E. Miller and others," (naming them) "constitute all the descendants and heirs at law of Richard Caulk, and that the interests of Long's children" (naming them) "have been conveyed to Lewis James, one of the plaintiffs, then the plaintiffs have shown title to sixty-two seventy-fifths of the lands described, and are entitled to recover this, unless barred by the statute of limitations, which runs only from the 3d of June, 1856."

2. "If the jury believe that Alton Long married a daughter of Richard Caulk, the original grantee of the land in controversy, that she died in 1848, leaving five surviving children; that one of said children died in its infancy, after the death of said mother, and that Alton Long survived his wife and child, and died in 1864, and that Long made a conveyance of the land in controversy, his wife not joining therein, and that defendant took possession of the premises after the 3d of

June, 1856, claiming under the conveyance from said Alton Long, then the conclusion of the law is, that such possession cannot be regarded as adverse until the year 1864, and therefore Lewis James is entitled to an undivided twelve seventy-fifths of the land," etc.

3. "If the jury believe that Thos. Caulk, one of the children of R. Caulk, the original grantee, etc., died previous to the year 1850, leaving six surviving children, and that five of them only now remain alive, and that the other died intestate, etc., and that the plaintiffs, Laura P. Orr and Sallie Wasson are two of said surviving children of said Th. Caulk, and that said Laura intermarried with the plaintiff, Robert Orr, previous to the 3d of June, 1856, and has lived with her husband ever since, and that Wasson was a *femme covert* previous to 1856, etc., then said plaintiffs, Orr and Wasson, are entitled to one-thirtieth part of said land, notwithstanding an ouster, etc."

Other instructions in regard to others of the plaintiffs were asked and refused, but as the case must be remanded, it is thought unnecessary to notice them. At the instance of defendants the court gave the following instructions:

1. "In order to entitle the plaintiffs to recover in this action they must affirmatively show that they, or those under whom they claim, were seized in fee of the premises within ten years before the commencement of this action, unless they show they were under disabilities," etc.

2. (This is in substance, that if one of the plaintiffs was barred, there could be no recovery.)

3. (This instruction relates to tenancy in common.)

The other instructions are upon the same point, and it is useless to copy them.

There was a verdict and judgment for defendant.

The first question in this case is, whether where there are more plaintiffs than one, and one is barred, there can be a recovery. The doctrine that where one is barred all are, was first asserted by this court in the case of Keeton's heirs vs. Keeton, (20 Mo., 530) which was a personal action, and is reiterated in

Walker vs. Bacon, (32 Mo., 159) which was a chancery proceeding. But the statute of 1849, re-enacted in the revision of 1855 and 1865, contained this provision : "Where there are two or more plaintiffs, any one or more may recover any interest they may be entitled to in the same manner as if they had brought separate actions, and it shall not be objected to a recovery in such actions, that any one or several of the plaintiffs do not prove any interest in the premises claimed ; but those entitled shall have judgment according to their rights for the estate or such part of it as he, or she, or they, might have recovered if they had brought separate suits."

In Primm vs. Walker, (38 Mo., 99) this court in a construction of this statute, declared that the only mode in which a plaintiff could avail himself of its provisions, was to dismiss as to his co-plaintiffs who showed no interest. And as the plaintiffs in that case preferred to take a non-suit, the judgment below was affirmed. But in the present case the plaintiffs asked an instruction clearly in accordance with the statute and we think it should have been given. In a joint action by two or more plaintiffs, the right of any one or more to recover may depend on facts to be passed on by the jury, and the plaintiffs cannot be compelled to determine those facts in advance by a voluntary non-suit as to such of the plaintiffs as may ultimately fail to recover. This statute was designed to relieve the plaintiffs from such responsibility, and clearly provided that a failure of title in any number of plaintiffs should not prevent a recovery on the part of any one of them who did show a good title to any interest in the premises, not barred by the statute of limitations or otherwise.

On a new trial of this case, there will be several questions raised by the instructions, which may with propriety be noticed now.

The defendant bought this land in 1853, of Hendricks, who bought of Long in 1851. This land was entered in 1847— but the patent did not issue until 1856. The deed from Long to Hendricks was an ordinary deed of bargain and sale for the

fee simple title.  The defendant immediately took possession under this deed, and has been in possession ever since, exercising all the acts of ownership which could indicate a claim to an exclusive title.

Mrs. Long had a title to one-sixth, and the conveyance of this title seems to be the most prominent point in the case. Mrs. Long died in 1848, one year after the re-location under the act of 1836.  Long, who sold and conveyed by a warrantee deed in 1851, lived to 1864.

It will be seen from the instructions given in this case, that great importance was attached to the claim of one of the plaintiffs, who bought from the heirs of Mrs. Long, and many instructions were asked and given in relation to onster, in cases of tenancy in common.  Upon this point there seems to be really no difficulty.  Whatever may be the requisite adverse possession to onst co-tenants, when one of the tenants goes into possession as a co-tenant, it would seem that the possession of defendant in this case, taken as it was, under a conveyance of the fee simple title, ought not to be governed or construed by any such rules.  As in the case of Lodge vs. Patterson, (3 Watts, 74) the tenant here bought, as he supposed, the entire fee.  It was sold to him in this way, and there was nothing to apprise him that any one else claimed or had an interest, other than the person from whom he bought.  The deed under which he entered was a conveyance in fee simple with warranty, and when he entered into possession and improved and cultivated the place in 1853, his possession was obviously hostile to all claimants of every kind. The adverse possession was a public one taken under a deed duly recorded and of which every one having any interest in the land was bound to take notice.  And there was nothing to show that Hendricks, from whom defendant bought, was a tenant in common, or that Long, from whom Hendricks bought, was a tenant in common.  On the contrary, Long's deed in 1851 to Hendricks was an absolute conveyance of the entire estate.

In truth, it is obvious that the question of adverse possession, as between tenants in common, is entirely outside of the

case, so far as the title derived from Mrs. Long is concerned, for Alton Long had the curtesy during his life, and until his death in 1864, the plaintiffs deriving title from Mrs. Long could not sue. (Reaume vs. Chambers, 22 Mo., 54.)

Something has been said in this case in regard to Long's warranty, and the descent upon his heirs with assets.

This subject was discussed by Judge Gamble in Chauvin vs. Wagner (18 Mo., 553). This learned judge held, and so far as it appears, without any dissent on this point, that where it is shown that the assets by descent from the father are equal in value to the property which he conveyed absolutely, as in this case, and without regard to the rights of his wife, these obligations would descend to his heirs, in respect to the assets descended, and would compel them to make further assurance.

Our statute says (Wagn. Stat., 1352), "Lineal and collateral warranties with all their incidents, are abolished; but the heirs and devisees of every one who shall have made any covenant or agreement shall be answerable in such covenant and agreement to the extent of the lands descended or devised to them in the cases and in the manner prescribed by law."

Ch. Kent says: "Conveyances under the statute of uses are innocent conveyances, since they operate only to the extent of the grantor's right, and occasion no forfeitures; though, if a general warranty be annexed to these conveyances, it would at common law work a discontinuance, when the warranty descends upon him who has the right to the lands."

Our statute, just quoted, would prevent this discontinuance, but according to Chauvin vs. Wagner, would not relieve the responsibilities of the heirs to make good their ancestor's warranty, if they had assets by descent from him of equal value to the land sold by him with warranty.

And the case of Miller vs. Shackleford (3 Dana, 291) decided in Kentucky, where they had in substance the same statute we have, or rather I may say a statute from which our statute is probably condensed, asserts precisely the same doctrine held by this court in Chauvin vs. Wagner. The Ky.

Statute, 1796, expressly provided that no feoffment or other conveyance made, suffered or done, by the husband only of any lands, etc., of the inheritance or freehold of the wife, during the coverture, shall be or work any discontinuance thereof, but the wife or her heirs shall and may lawfully enter into all such lands, etc., according to their rights and titles therein, notwithstanding such feoffment or other conveyance.

It was further provided in the act of 1798 (1 Stat. at Large, 110) that "all alienations purporting to pass a greater estate than the alienor hath, shall operate to pass so much of the estate as he may lawfully convey, but shall not bar the residue of the right or estate, except that if the alienation be by warranty by the alienor and his heirs, and any heritage descend from him to the demandant, then he shall be barred to the value of the heritage so descended." This is expressed in fewer words in our statute.

We do not perceive any importance in the question whether the title as against the United States accrued on the entry in 1847, or after the issue of the patent in 1856. The suit was brought in 1870, and undoubtedly all the plaintiffs who were under no disability in 1856 are barred.

It is unnecessary for us to do more than remand the cause. The judgment is reversed and the cause remanded. The other judges concur.