## Jones v. Whitsett, *Appellant.*

1.  **Covenants for Title:** LIABILITY OF COVENANTOR. The fact that the defendant in ejectment evicted under title paramount was not in possession when the ejectment was brought, is no defense to an action by him against his grantor on covenants of warranty, where it appears that the grantor himself defended the ejectment.

2.  ——— : ——— : SUCCESSIVE GRANTORS. Where land has been conveyed with successive covenants of warranty and the last grantor has been compelled to indemnify his grantee, he may in turn have recourse to his grantor for the amount paid.

3.  ——— : ———: PLEADING : AMENDMENT: PRACTICE IN SUPREME COURT. Where a petition claimed damages as the immediate effect of an eviction upon plaintiff as covenantee, and upon the trial it appeared by evidence put in without objection that the eviction was suffered by plaintiff's covenantee and that plaintiff had indemnified him, so that plaintiff's real claim was to be re-imbursed this outlay by his covenantor (the defendant), but both sides treated the damages so sustained as within the scope of the petition, and plaintiff's recovery did not exceed the amount so paid, *Held,* that it was a case in which the trial court might properly have permitted an amendment of the petition, even after judgment, and this court would not reverse for the variance.

*Appeal from Franklin Circuit Court.*—HON. A. J. SEAY, Judge.

AFFIRMED.

*Crews & Booth* for appellant.

*A. A. Underwood* for respondent.

MARTIN, C.—This action was commenced on the 21st day of November, 1879, for breach of covenant of warranty in a deed of conveyance. Before the end of the trial, the plaintiff discontinued his claim for damages on the covenant as to all the land described in the petition, except forty acres. The case was tried by a jury and resulted in a verdict and judgment for plaintiff in the sum of $131.50, from which the defendant appeals. The facts appearing in the evidence of this case would have been disclosed more satis-

factorily if the law governing them had been more definitely declared and applied by the court as the case proceeded.

It appears from the evidence that on the 18th day of March, 1865, the plaintiff purchased a tract of 173 acres of land from defendant for $900, which included the forty acres involved in the judgment of this case. The deed contained the usual statutory covenants and a covenant of warranty. In March, 1870, Ann E. Miller and others brought an action of ejectment against the plaintiff upon a paramount title. Judgment in the circuit court went in favor of defendant there, from which an appeal was taken by the adverse party to the Supreme Court. There were other actions pending in the Supreme Court which involved the same issues. After the decision of one of them which was styled *Miller v. Bledsoe*, 61 Mo. 96, the merits of the case against Jones, the plaintiff herein, were regarded by the parties as practically determined in favor of the paramount title. Accordingly the case of *Miller v. Jones* was by stipulation of the parties reversed, and judgment was entered in the circuit court for recovery of 11-36 of the forty acres described in this case.

As to whether Mr. Whitsett had notice of the suit of *Miller v. Jones* and an opportunity to defend it, the testimony is apparently conflicting, but the evidence on the whole points but one way. The suit was defended by attorneys, who, in obedience to the ruling in *Miller v. Bledsoe*, signed the stipulation to reverse the judgment and enter up a judgment for plaintiff. Mr. Jones testified that although they acted in his name, he never employed them and never paid them. Mr. Whitsett disavows employing or paying them. Now, if this be true, then the attorneys must have occupied themselves in attending to a lawsuit in the circuit and Supreme Court about which the parties in interest were entirely indifferent. The same attorneys, or some of them, represent Mr. Whitsett in this case, and he admits that he had notice of the ejectment suit, but not a

written notice, and that Jones looked to him on his warranty, as indicated in a conversation with him after the suit was brought. The evidence tends to show that Jones paid on execution for costs about $150 by himself and his garnishee. Immediately after the recovery on the paramount title, it was bought in by Mr. Whitsett, so that no actual ouster or dispossession of Jones was suffered by him or his grantees.

It was contended by defendant that the plaintiff in this case was not in actual possession of the premises at the time the suit in ejectment was commenced, and that consequently the judgment would have been of no effect; and that no ouster could have taken place under it for which defendant was responsible on his covenant. If Mr. Whitsett defended the ejectment, this point would have no force. He certainly treated the action in the light of a hostile assertion of paramount title, and it was so treated by Jones and by the plaintiff in the action. After judgment Whitsett concedes this to be its legal effect, by purchasing the outstanding title and receiving a deed from the holders of it, which recites that it is "the same land recovered in ejectment suits by the grantors herein in their several suits against John Earley's heirs, James Jones and Joel McDaniels in the circuit court of Franklin county."

1. COVENANTS FOR TITLE: liability of covenantor.

Besides, the evidence of Jones not being in possession when the ejectment suit was brought, is by no means clear of doubt. It rather tends to show that he was in possession of at least a portion of the forty acre tract. The defendant in his answer avers that after the deed to the land was made, the plaintiff entered into possession, and that ever since, he and his grantees have been in possession of the same. The attorney who brought the ejectment suit, testifies that Jones was in possession when he sued, and that he sold to McDaniels pending the suit, and that McDaniels was sued in a distinct action for part of the forty acre tract. The plaintiff admits in the bill of exceptions

that McDaniels, his grantee, was in possession when the *Miller suit* was brought, but says nothing about his own possession. The record of the ejectment suit is not set out in the bill of exceptions, and the statements relating to it are silent as to the precise date of the institution of the same.

It appears from the evidence that on the 24th day of February, 1870, the plaintiff parted with his title to the land by deed of that date to Joel McDaniels, which contained the usual statutory covenants and a covenant of general warranty. This fact does not seem to have engaged the attention of the parties at the trial, except in so far as it was connected with the fact of actual possession. It is, nevertheless, a very important fact bearing upon the right of action itself. It has been held in this court that the covenant of warranty expressed in a deed, and the statutory covenant of warranty implied in the words "grant, bargain and sell," run with the land to each subsequent grantee, and that the cause of action enures to the person who is owner of the title at the time the eviction is suffered and the covenants are broken. *Dickson v. Desire*, 23 Mo. 151; *Chambers v. Smith*, 23 Mo. 174; *Cockrell v. Proctor*, 65 Mo. 41; *Conklin v. Railroad Co.*, 65 Mo. 533. The eviction in this case, which was a constructive one, took place after Jones had parted with his title to McDaniels. The right of action for breach of Whitsett's covenant primarily vested in McDaniels, the owner of the title. It does not follow that Jones, the first covenantee, has parted with all right of action on the covenant of his grantor by transfer of his title. He may have a resulting right of action on the covenant notwithstanding his transfer. If the first covenantee sells by a covenant of warranty to his grantee, as Jones did in this case, it is apparent that he remains interested in the success of the title after his transfer to the extent of his own covenant at least. After indemnifying his covenantee he has the right to look to his covenantor. After having discharged the

3. ——: ——: successive grantors.

obligation of his own covenant, he can call upon his covenantor to make good to him the amount for which he was liable and has paid off. Rawle on Covenants, (4 Ed.) 341. It is to this principle Judge Leonard alludes in *Chambers v. Smith,* where he says: "Nor will we deny the action, allowed only in respect to the actual damage, to the party upon whom it has fallen, and allow it to the original grantee, except so far as he may be bound to indemnify his immediate grantee by reason of his own covenants," and Judge Richardson, in *Vancourt v. Moore,* 26 Mo. 98, where he says: "Ashford could not sue for he had parted with all his interest in the land, and he could not use the covenants which ran with it without first satisfying the liability on his own covenant."

The pleadings in this case were not drawn with particular reference to this peculiar phase of the plaintiff's rights as a covenantee. The petition treats the plaintiff's damages as the immediate effect of the eviction upon him as covenantee, and not such as result to him by breach of his covenant to his own grantee. But as the parties on both sides have treated the damages as within the scope of the petition, and admitted his covenant with his grantee without objection, I do not think it would be just to reverse the case on this account. The lower court could, even after judgment, permit an amendment to the petition so that it might correspond with the facts proven. And if the objection had been properly made at the trial, it would probably have allowed a sufficient amendment to obviate the variance.

3. ———: ———: pleading: amend-ment: practice in supreme court.

After Jones had conveyed to McDaniels, he was under no obligation to defend an ejectment suit except by virtue of his covenant in his deed of sale. The fact that the action was against him as possessor, could not change the law governing his rights and liabilities. If the action had been instituted against McDaniels, or any one else in possession, the obligation of Jones on his covenant would

have been the same. In discharging the costs of such a suit he was discharging his liability to the owner of the land on his own covenant, and to the extent of such payment and discharge he was perfecting his right of action against his own covenantor. And as his verdict in this case did not exceed the costs he had actually paid, the damages were clearly recoverable from Whitsett on his covenant.

As there was no controversy in the case about the validity of the paramount title which was asserted, I think the instruction given by the court of its own motion and the instructions given at the instance of defendant, placed the case fairly before the jury, and that the instructions refused by the court would not have added anything necessary to a proper understanding and decision of the issues submitted to them.

The judgment is affirmed. All concur.