# KENNEDY, Appellant, v. KOOPMANN.

### Division Two, December 17, 1901.

1. **Wife's Land:** CONVEYANCE WITHOUT HUSBAND JOINING: ANTENUP-TIAL AGREEMENT: CURTESY: SPECIFIC PERFORMANCE. Prior to the revision of the statutes of 1889, a married woman could not convey her separate estate in lands without her husband joining in the deed, unless the title was held by a trustee for her. And although an antenuptial agreement may have been entered into between them in 1885, without the intervention of a trustee, to the effect that she could hold the land "separate and apart" from him "to her own separate and exclusive use and benefit.....unaffected by said marriage.....with absolute freedom and power on her part to use, sell or otherwise dispose thereof during coverture," nevertheless a deed made by her alone, after the passage of said married woman's enabling act, does not convey to her grantee a good title at law, for such agreement did not deprive him of his curtesy initiate. And, hence, where she has agreed by contract to convey land to the other party "by good merchantable title," a court of equity will not, in a suit for specific performance, compel such other party to accept a deed signed by her alone.

2. ————: ————: ————: ————: APPOINTMENT OF TRUSTEE. The appointment by the circuit court of a trustee to enable a married woman to convey her separate lands, held by her under an antenuptial contract, "unaffected by said marriage," and the joinder by him with her in a deed, did not affect her husband's inchoate curtesy therein, unless he had by said antenuptial agreement expressly waived his curtesy.

3. **Interest on Money Held for Performance.** Where parties enter into contract for the purchase of land, and which can not be performed because of the inability of one of the parties to make perfect title, the other by counterclaim is entitled to interest on the money held by him in readiness for the performance of the contract on his part.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz,* Judge.

AFFIRMED.

*M. Kinealy* and *Kinealy & Kinealy* for appellant.

(1)   The only objection to the deed tendered by plaintiff as the complete fulfillment of her contract was, that her husband was not a party to it.   (2) The marriage contract became part of plaintiff's deed to defendant.   Klenke v. Koeltze, 76 Mo. 240.   (3) If the deed tendered by plaintiff conveyed a sufficient title she performed her contract, notwithstanding the adverse opinion of the examiner, or of defendant's counsel.   The title was marketable.   Greene v. Ditsch, 143 Mo. 1.   (4) The husband could waive his statutory rights in favor of his wife, by contract.   Hart v. Leete, 104 Mo. 329; Clark v. Clark, 86 Mo. 122; DeHatre v. DeHatre, 50 Mo. App. 5; Christmas v. Hahn (Ky.), 9 S. W.. 279; Am. Home Missy. Soc'y v. Wahhams, 10 Barb. 598; McCord v. McCord, 19 Ga. 602; Strong v. Skinner, 4 Barb. 551; Bradish v. Gibbs, 3 John's Ch. 522.   (5) The marriage contract created a separate estate in plaintiff, Elizabeth F. Kennedy, and gave her an absolute power to dispose of all her estate by her own deed as effectually as if she were a *feme sole.*   Fairchild v. Cresswell, 109 Mo. 38; Strong v. Skinner, 4 Barb. 551, citing Bradish v. Gibbs, 3 John. Ch. 522; Hoggatt v. White, 2 Swan (32 Tenn.) 265; Christmas v. Hahn (Ky.), 9 S. W. 279.   (6) Even if the sole conveyance of plaintiff would not pass title to the property owned by her and described in it, certainly the conveyance of herself and Vogel, trustee, would do so. Cases under point 5, supra.   (7) The wife having in this case the absolute power of disposition of her real estate, her deed executing that power conveyed a title free of all claim of her husband to curtesy or other marital right in the land conveyed; even if, under the contract, the husband would take curtesy in the lands of the wife it would only exist in lands remaining undisposed of at her death.   McTigue v. McTigue, 116 Mo. 142; 8 Am. and Eng. Ency. of Law (2 Ed.), 525; Neelly v. Lancaster, 47 Ark. 179; Cooper v. MacDonald, 7 Ch. Div.

300; Pool v. Blakie, 53 Ill. 495; Chapman v. Brice, 83 Va. 392; Kiracofe v. Kiracofe, 93 Va. 591; Wylie v. Frampton, 17 Ont. 515. (8) Charles F. Vogel had no interest in the property, his appointment as trustee was unnecessary to enable plaintiff to convey a good title to defendant under the contract. Cases under point 4, supra. (9) The contract of sale set forth the measure of damages on its breach, and, hence, even had plaintiff failed to perform her contract, the allowance of interest ($250) on the $2,500 was error. Besides, there was no cause for defendant holding the $2,500 in readiness for the performance of the contract after twenty days from its date.

*Lubke & Muench* for respondent.

(1) The marriage contract between these parties did not expressly create a trust, nor did it name a trustee. But one of two results can follow from this fact. Either no equitable separate estate was created in the wife, and then the signature of the husband was essential, under the statute, in order to validate the deed of the wife, the marriage contract having been executed prior to 1889. Brown v. Dressler, 125 Mo. 592; Arnold v. Willis, 128 Mo. 150; Clay v. Mayer, 144 Mo. 376. Or, else, an equitable separate estate was by such contract created in Mrs. Kennedy, which left the legal estate elsewhere. In the absence of a designated trustee, equity vested such legal title in the husband, Robert S. Kennedy. That legal title so remained unless divested by some proper means. 1 Bishop on Mar. Women, secs. 28, 795, 796, 800; 2 Bishop on M. W., sec. 116; Gover v. Owings 16 Md. 91; Blanchard v. Blood, 2 Barb. 352; Gordon v. Eans, 97 Mo. 588; R. S. 1889, sec. 8683. (2) It is true that by her sole deed, a married woman may now convey her equitable estate in land in this State, but the legal title will remain in the trustee. Ryland v. Banks, 151 Mo. 1. (3) This marriage

settlement did not exclude Mr. Kennedy from possible curtesy rights on his part.    There are no words of express exclusion in the instrument, and these wanting, the curtesy right attaches to an equitable as well as a legal estate. Tremmel v. Kleiboldt, 75 Mo. 255; Soltan v. Soltan, 93 Mo. 307; McTigue v. McTigue, 116 Mo. 142.    (4) A court of equity will not force a vendee to receive an unsatisfactory, imperfect or non-marketable title.    It will not do so, if a third person has an interest in, or claim against, the property, however improbable it be that the right will be exercised.    Waterman on Spec. Perf., secs. 411, 412, 413; Rozier v. Graham, 146 Mo. 361; Michener v. Holmes, 117 Mo. 185; Green v. Ditsch, 143 Mo. 12. This remedy is granted as a matter of sound judicial discretion, not as a matter of course.    Pomeroy on Spec. Perf. of Cont., sec. 35; Veth v. Gierth, 92 Mo. 97; Hill v. Rich Hill, etc., 119 Mo. 28; Isaacs v. Skrainka, 95 Mo. 524.    The onus is upon the party seeking performance.    Taylor v. Von Schraeder, 107 Mo. 225.    An outstanding dower interest will defeat the action.    Greffet v. Willman, 114 Mo. 122.    (5) On the failure of plaintiff to carry out her contract, defendant is entitled to be reimbursed as to his actual losses.    It is agreed that he held ready the sum of $2,400, while waiting for plaintiff to complete the title which was incomplete.    The very date when the opinion of counsel was sought (May 19, 1898) shows that the negotiations had been extended thus late.    The twenty days limit was on defendant, not on plaintiff; as to her she had "a reasonable time" within which to remedy defects, and what that reasonable time was has been found by the court below.

BURGESS, J.—This is an action by plaintiff for the specific performance of a contract for the sale by her to defendant of a lot of ground and appurtenances in the city of St. Louis, which the defendant refused to carry out because

the deed tendered to him did not, as claimed, pass a good and merchantable title.

In 1885, the plaintiff intermarried with Robert S. Kennedy, and up to the time of the institution of this suit on August 16, 1898, their relation as husband and wife had never been severed though they were not living together. Prior to their marriage they entered into a marriage contract without the intervention of a trustee, wherein it was recited that Robert S. Kennedy desired "that all the property of his intended wife shall be settled on her, to her sole and separate use, free from his interference or control, and not subject to his debts." And it was covenanted "that all the lands, tenements and hereditaments, goods, chattels, stocks, bonds, notes, rights in action, credits and all other property, real, personal and mixed, whether in possession, reversion or remainder, which the said Elizabeth F. Pratt, party of the second part, now has, or which she may at any time hereafter acquire, by gift, devise, descent or otherwise, shall be owned and held by her to her own separate and exclusive use and benefit, separate and apart from her intended husband, unaffected by said intended marriage in every particular, and not subject to his debts or liabilities, with absolute freedom and power on her part, to use, sell or otherwise dispose thereof during coverture as she may deem fit, and at her death to make such disposition of the same by last will or testamentary appointment in the nature of a last will, as she may deem proper and fit; and the said party of the first part hereby grants unto her, said party of the second part, power and authority to make such last will, and hereby assents to the same when made." In April, 1898, Mr. Charles F. Vogel was appointed trustee under this marriage contract, which was after the date of the contract of sale sued upon.

The contract for the sale of the land was entered into on March 14, 1898, between respondent Koopmann, on the one side, and Mr. Charles F. Vogel, as agent for plaintiff, on the other, with a ratification thereof by her.

The sale was of an improved lot of ground in the city of St. Louis, and the purchase price was $5,500, payable $2,500 in cash and $3,000 in seventeen months, secured by deed of trust.   Further conditions were that the title to the property should be perfect, conveyed by warranty deed, free from liens and incumbrances; that if, upon examination, the title proved defective, and could not be made good within a reasonable time, the sale should be off, and the earnest money returned, as also the fee for examining title, not exceeding $15.   Koopmann was granted twenty days from date of the agreement to close the purchase and investigate the title.

The objection to the deed was that Mr. Robert S. Kennedy had not signed it, and that without his signature it was claimed that the title would not be good and merchantable. Plaintiff declined to offer any deed signed by her husband, and instituted this suit.   To her petition for specific performance, defendant pleaded the fact of plaintiff's marriage; that she had broken the contract by not offering a warranty deed joined in by her husband, and pleaded in recoupment the loss of interest on $2,400, which he held in readiness, the expenditure of $15 for investigating title, and the loss of $100 earnest money with interest.   To this answer a reply was filed, setting up the marriage contract, averring the appointment of Vogel as trustee, and claiming that the deed tendered to the defendant complied with the contract.

The case was tried upon an agreed statement of these facts, together with profert of the various instruments mentioned in the pleadings.   The trial court dismissed plaintiff's bill and rendered judgment on defendant's counterclaim for $365.   After unsuccessful motion for new trial, plaintiff appealed to this court.

The only objection to the deed tendered by plaintiff to defendant in compliance with the terms of the contract of sale of the property by her to him is that her husband did not join in the deed with her, and as defendant claims, was insuffi-

cient to pass the possible curtesy rights of her husband in the property. But plaintiff contends that he could, and did, in fact, waive all such rights by the antenuptial contract. That the husband might have done so may be conceded but the question with which we have to deal in this case is, whether or not he did so.

There are no words in the antenuptial contract creating a trust, or appointing a trustee, in the absence of which it created a mere statutory separate estate in Mrs. Kennedy, of which she could hold possession and enjoy rents, but could not convey at that time without her husband joining in the deed, as the contract was made before the Revised Statutes of 1889 took effect, and in the absence of statutory enactment to the contrary the rule is that a married woman has no capacity to dispose of her statutory separate lands unless the right to do so is expressly conferred by statute. "Since by nearly all opinions a married woman has the full power of disposition over her equitable separate estate in personal property, she may exercise the same power when it is simply made her separate property by statute. But since real estate can at law be conveyed only in a particular way, and in equity a married woman can dispose of it only under circumstances to authorize a court of equity to compel those having the legal title to make to the wife's grantee a title good at law, it follows that the wife can convey this estate only in the manner which the law, as distinguished from equity, requires. For the full and complete title is, at law, in the woman herself; there is no trusteeship; she owns all the same as though she were a *feme sole*." [2 Bishop on the Law of Married Women (1875) sec. 174.]

Again, the same author says: "That, in the absence of express or constructive authority, in the statute, the wife can not convey her statutory real estate, except by conforming to the provisions under which conveyances of her reversionary common-law lands are authorized, is abundantly established by adjudication; and, as a general rule, her sole attempt

neither of necessity charges the estate in equity nor operates as an agreement to convey, but the deed is simply void." [Ib., sec. 180.]

The appointment of the trustee for Mrs. Kennedy by the circuit court of the city of St. Louis was merely an idle ceremony, as his joinder in the proffered deed in no way affected the marital rights of her husband in her real estate.

The words relied upon in the marriage contract as a relinquishment of the husband's right to curtesy in the property in question are, "to her own separate and exclusive use and benefit, separate and apart from her intended husband unaffected by said intended marriage in every particular, and not subject to his debts or liabilities," but the curtesy rights of the husband are not mentioned or alluded to.

In the case of Tremmel v. Kleiboldt, 75 Mo. 255, it was held that a conveyance of real property to the sole and separate use of a married woman does not debar her husband from curtesy in lands of which she died in the actual possession, or, the rents, issues and profits of which she received through her trustee, unless it appears from the deed that such result was intended by the grantor. The court said: "It is well settled that the husband is entitled to curtesy in all estates of inheritance of which the wife dies seized, either at law or in equity. As to equitable estates, actual possession by the wife, or the receipt by her of the rents, issues and profits, or possession by trustee for her benefit, is equivalent to legal seizin, and the limitation of such estates to the sole and separate use of the wife, will not debar the husband from curtesy, as such limitation necessarily terminates on the death of the wife." [Alexander v. Warrance, 17 Mo. 228; Baker v. Nall, 59 Mo. 265; Lewin on Trusts, 622; Watts v. Ball, 1 P. Will. 108; Parker v. Carter, 4 Hare, 399; Morgan v. Morgan, 5 Mad. 248; Follett v. Tyrer, 14 Sim. 125; Appleton v. Rowley, 8 Law Rep. (Eq. Cas.) 139; Mullany v. Mullany, 4 N. J. Eq. 16; Cushing v. Blake, 30 N. J. Eq. 689.] And we are of

opinion that the marriage contract fails to indicate a purpose on the part of Mr. Kennedy to deprive himself of his right to curtesy in his wife's realty, and therefore did not do so.

In Soltan v. Soltan, 93 Mo. 307, it was ruled that "the conveyance of real estate by a husband to a trustee in trust for the sole and separate use of the grantor's wife, her heirs and assigns, the trustee covenanting that, on the death of the wife, he will convey or dispose of the premises as the wife may, by will or other writing, direct, or, in fault of such direction, will convey to her legal heirs, will not, upon the death of the wife, deprive the husband of curtesy in the land so conveyed."

We are therefore of the opinion that Mrs. Kennedy's husband had, in the real property in question, an inchoate right of curtesy, which he did not deprive himself of, or relinquish by the antenuptial contract, and for these reasons the title attempted to be conveyed was imperfect and non-marketable.

No error was committed in allowing defendant interest on the money that he had and kept on hand for the purpose of complying with the terms of the contract, when plaintiff was ready to perform it on hers. It was her fault that he kept the money on hand for an express purpose, and it is but proper and right that he should be allowed interest thereon as allowed by the court.

For these reasons the judgment is affirmed. All concur.