CLYDE MILLER, GAIL MILLER, LANCE MILLER and MAZIE CARTER v. J. R. PROCTOR, HANNAH E. PROCTOR and LAWRENCE HOGSETT, Defendants, J. R. PROCTOR and HANNAH E. PROCTOR, Appellants.—49 S. W. (2d) 84.

Division Two, April 8, 1932.

*Embry & Embry* for appellants.

*A. J. Bollinger* for respondent.

FITZSIMMONS, C.—This is an action in ejectment for certain land which plaintiffs claim to own as tenants in common. They allege that on and since April 2, 1928, they have been entitled to possession of the land, but that defendants unlawfully have withheld possession. The land is the following described tract in Morgan County, Missouri, to-wit: Commencing at a point one hundred and sixty-five feet east of the Southwest corner of the Northwest quarter of Section Twelve, Township 42, Range 16, running thence north three hundred and thirty feet, thence east four hundred and forty yards, thence south three hundred and thirty feet, thence west four hundred and forty yards to the place of beginning and containing in all ten (10) acres. The answer of defendants Proctor was a general denial, a plea of estoppel in that these defendants paid full value for the land without notice of plaintiffs' claim thereto, and a plea of the Statute of Limitations. Defendant Hogsett answered by general denial and that he was a tenant from year to year. The parties waived a jury and the court, upon trial, gave judgment for plaintiffs for possession and costs. A motion for a new trial was overruled and defendants appealed. Defendants urge that the trial court erred in admitting in evidence, over objection, a certain recorded notice and also a partition suit decree which had not been recorded in the recorder's office, and in not finding that plaintiffs' claim was barred by the Statute of Limitations.

H. R. Phillips, who died intestate December 26, 1864, was agreed to be the common source of title. Plaintiffs are the grandchildren of H. R. Phillips and the children of Mary F. Miller (a daughter of H. R. Phillips) and of Henry B. Miller, her husband. Mary F. Miller, the mother of plaintiffs, died July 1, 1887, and Henry B. Miller, the father of plaintiffs, died April 2, 1928. Plaintiffs claim right of possession from the date of the death of their father, and they began this action October 12, 1928. H. R. Phillips left as his heirs four children, including plaintiffs' mother, Mary F. Miller. The land in controversy in this suit is part of the land which H. R. Phillips owned at the time of his death and which passed by descent to his heirs. Mary F. Miller inherited a one-fourth interest in all the land of her father, Phillips. After the death of Phillips, Henry B. Miller, father of plaintiffs, bought the interests of two of the heirs of the Phillips land, and in 1881, Miller, as owner of an undivided one-half share, so acquired by purchase, and his wife, Mary F., as owner of an undivided one-quarter interest, received by inheritance, brought a suit against Nora Taylor, the owner of the remaining one-fourth interest, for the partition of all of the Phillips land. The Circuit Court of Morgan County, by interlocutory decree, entered October 22, 1881, found the interests of Miller and wife and of the defendant, Nora Taylor, to be as hereinbefore stated. Partition was decreed, and

commissioners were appointed to make division. The commissioners, at the next term of court, reported that they had divided the land in kind between the parties according to their respective interests giving to H. B. Miller eighty-five acres, appraised at one-half the value of the premises in suit, giving to Mary F. Miller, wife of H. B. Miller and mother of plaintiffs in the instant action, ten acres appraised at one-fourth the value of the premises, and to Nora Taylor forty-five acres appraised at one-fourth the total value. The report of the commissioners accurately and fully described the allotment made to each of the parties. The ten-acre portion awarded to Mary F. Miller, mother of plaintiffs, is the tract from which plaintiffs are now seeking to eject defendants. The Circuit Court of Morgan County, by its final judgment in the partition suit, found that the report of the commissioners was in accordance with the interlocutory decree of partition, and that no exceptions to the report had been filed. The judgment then proceeded: "It is ordered and adjudged by the court that the report of said commissioners be in all things approved and that the partition by them made among the parties hereto be confirmed as binding and conclusive upon all parties to these proceedings and all persons claiming under them." We will examine later the objections made by defendants in this action to the admission in evidence of the partition suit records here epitomized. Henry B. Miller later purchased the part of the land which had been allotted to Nora Taylor.

After the death of Mary F. Miller in 1887, Henry B. Miller, her husband, married again. By deed dated February 17, 1893, and duly recorded, Henry B. Miller and his second wife, Lucy, conveyed to E. J. Williams the south half of the Southeast quarter of the Northwest quarter and thirty-five acres, the east part of the Southwest quarter of the Northwest quarter of Section 12, Township 42, Range 16. This conveyance of approximately seventy-five acres included the land here in controversy, namely the ten-acre tract, which, by the partition decree, had been set apart to Mary F. Miller, mother of plaintiffs and first wife of Henry B. Miller. The land so sold by Miller to Williams passed by mesne conveyances to the defendants Proctor.

Ira S. Nail was in possession of the land under one of these conveyances from January 26, 1911, until February 25, 1926, when he and his wife made a deed to defendant, J. R. Proctor. While Nail was in possession plaintiffs caused to be recorded in Morgan County a notice addressed to Nail informing him and all others to whom the notice might come that plaintiffs as heirs at law of their mother, Mary F. Miller, would, at the death of their father, Henry B. Miller, demand full possession of the ten-acre tract in suit (describing it);

that they had an absolute title to the land, and that their father only had the right of the use of the land so long as he lived, which he transferred to E. J. Williams, February 17, 1893. As has been stated, the father, Henry B. Miller, lived until April 2, 1928. The trial court overruled the objection of defendants to the admission in evidence of the record of this notice. The grounds of objection were that the notice was not addressed to any party to the suit; that there was no showing of a delivery of the notice or a copy of it to defendants Proctor at the time of their purchase, and that the instrument not having been acknowledged according to law, it had no place in the records of Morgan County and it was not notice to anyone. Defendant J. R. Proctor testified that he had knowledge of the notice, gained from an abstract of the title to the land, for about two years and that he had corresponded with the plaintiffs about their claim to the ten acres. The objection to the notice will be examined in its order.

■ I. Defendants object that the partition proceedings, not having been recorded in the land records of Morgan County, were not binding on defendants. To support this position defendants rely upon Section 1134, Revised Statutes 1929, which was in the statute books before the partition suit of 1881. The pertinent parts of that section are as follows:

"In all cases where any court of record shall render final judgment, adjudging or decreeing a conveyance of real estate, or that any real estate pass, or shall render any final judgment quieting or determining the title to any real estate, the party in whose favor the judgment or decree is rendered shall cause a copy thereof to be recorded in the office of the recorder of the county wherein the lands passed or to be conveyed or the title to which is quieted or determined lie, within eight months after such judgment or decree is entered. If such judgment or decree be not so recorded, it shall not be valid except between the parties thereto and such as have actual notice thereof . . ."

This point is without merit as we shall see. This statute (less the provisions relating to quieting or determining title to real estate which were added in 1909, Missouri Laws, 1909, p. 612) has been part of "an act regulating judgments and decrees," since 1825 when it was approved February 16, 1825. Of slightly more antiquity and controlling in partition proceedings is Section 1576, Revised Statutes 1929, which makes it the duty of the clerk of the court to make out a certified copy of the report of commissioners in partition and of the judgment and confirmation and cause the same to be recorded in the office of the recorder of each county in which any of the real estate thus divided is situated, the costs of the copy and recording to

be taxed as other costs. This has been the law since 1905 (Laws 1905, p. 267). Prior to 1905 the statute relating to the recording of the commissioners' report and the court's judgment in partition was as follows: "A copy of such report and of the judgment or confirmation, duly certified by the clerk of the court, shall be recorded in the office of the recorder of the county in which any of the estate thus divided is situated." [Sec. 4402, R. S. 1899.] Such was the applicable statute from 1905 backward to "An act to provide for the partition of lands," approved December 24, 1824, in which the recording provision appears as part of Section 3. The old statute did not impose upon any specified party or official the duty of recording a partition report and decree. And neither the old nor the new statute on that subject lays, if indeed it could lay, a penalty of invalidity upon the court's final judgment of partition for failure of anyone to file a copy of the report and judgment in the recorder's office. To sustain defendants' statutory point would be to rule that Section 1134 of Chapter 5, the General Code, governs Article II concerning partition of Chapter 7, relating to particular actions, and . would make inoperative Section 1576, Revised Statutes 1929, and its antecedents in prior revisions of the statutory article of partition. The statement itself demonstrates its violation of familiar canons of statutory construction.

■ If by the objection that the commissioners' report and the final judgment in partition are not binding because they were not recorded in the land records of Morgan County, defendants mean to attack the validity of the partition proceedings, they make a collateral attack which should not avail them. [Waller v. George, 322 Mo. 573, 16 S. W. (2d) 63; Virgin v. Kennedy, 326 Mo. 400, 32 S. W. (2d) 91.] And as defendants find no intrinsic flaws in the report and the judgment, they must, by their objection, be understood to be making a collateral attack *de hors* the record of the partition proceedings. The judgment in partition bound Henry B. Miller and all who claim under him. [Sec. 1575, R. S. 1929.] A judgment in partition is just as conclusive as any other judgment. It is almost superfluous to add that a statutory partition in kind is not a conveyance of real estate contemplated by Section 1134, Revised Statutes 1929. It merely vests in each party to whom an allotment of land is made the title to the share allotted of all parties to the suit. [Case v. Mitzenburg, 109 Mo. 311, 19 S. W. 40; Hart v. Steedman, 98 Mo. 452, 11 S. W. 993; Forder v. Davis, 38 Mo. 113.] The assignment of error predicated upon the admission in evidence of the partition records is ruled against defendants.

■ II. It may be conceded that the recorded notice of plaintiffs to Ira S. Nail, dated June 21, 1913, did not give to defendants con-

structive notice of the rights which plaintiffs expressed an intention to assert upon the death of their father. The notice was not acknowledged. Section 1681, Revised Statutes 1929, providing that all records, made by the recorder of the proper county one year before that section took effect, of any written instrument not acknowledged or invalidly acknowledged should thereafter impart notice to all persons of the contents of such instruments, was approved March 25, 1913. [Laws 1913, p. 345.] Laws enacted by the General Assembly in 1913 without emergency clauses took effect June 23, 1913. The statute under examination did not have an emergency clause. The notice in question was recorded June 30, 1913, which was not one year before June 23, 1913. Decisions of this court interpreting identical statutes enacted in 1847 and in 1887 limited their operation to instruments recorded one year or more before the respective effective dates. If a construction of Section 1681, Revised Statutes 1929, with reference to the notice recorded June 30, 1913, were requisite to a decision of this case, it may be assumed that the interpretation would be in accord with the former decisions. [Williams v. Butterfield, 182 Mo. 181, 81 S. W. 615; Geer v. Missouri Lumber & Milling Co., 134 Mo. 85, 34 S. W. 1100, 56 Am. St. Rep. 489.] But in the view which we take of this case, the evidential value of the notice to Nail is negligible, and any error which may have been committed in admitting it is harmless.

■ III. Are plaintiffs barred by the Statute of Limitation which defendants have pleaded? In our opinion they are not barred As has been said, the mother of plaintiffs to whom the land in suit was allotted in partition died in 1887. She, Mrs. Mary F. Miller, was vested with a complete fee simple estate in the land by the judgment in partition in 1882. Children (plaintiffs here) having been born of her marriage with Henry B. Miller, the latter, by common law, became entitled to a curtesy estate in the land which the wife owned. This was a freehold estate for the term of his natural life, and carried with it the right to Henry B. Miller to the possession of the land and to its rents and profits during coverture. For the statute (Sec. 3003, R. S. 1929) giving to married women a separate property in and sole control of their real estate was not enacted until 1889 (Sec. 6869, R. S. 1889). Of the statute giving to a married woman a separate estate in her real estate, this court said in Myers v. Hansbrough, 202 Mo. 495, 100 S. W. 1137: "She is given the sole right to its possession, its rents and profits. The husband is thereby deprived of his common-law right to the possession of his wife's land during coverture, and to that extent his curtesy initiate is impaired, but it is not destroyed, and upon the death of the wife it

becomes consummate. [Woodward v. Woodward, 148 Mo. 241, 49 S. W. 1001; Kennedy v. Koopmann, 166 Mo. 87, 65 S. W. 1020.]" To the same effect see Clay v. Mayr, 144 Mo. 376, 46 S. W. 157. The married woman's separate estate act is not retroactive and under the authorities last cited, Henry B. Miller was vested, during the lifetime of his wife and until his own death in 1928, with a freehold estate in the land in controversy here. For the term of his natural life, he was entitled to the continuous and exclusive possession of it as against plaintiffs, his children.

Because Henry B. Miller was thus entitled to the possession of the land during his lifetime, plaintiffs did not have a right of action in ejectment against him or, until his death, against his grantors. Plaintiffs had a legal estate from the death of their mother but they did not have a possessory title while their father lived. The Statute of Limitations did not begin to run against plaintiffs until their father died. [Reaume v. Chambers, 22 Mo. 36; Miller v. Bledsoe, 61 Mo. 96; Bradley v. Missouri Pacific Railway Co., 91 Mo. 493, 4 S. W. 427; Hall v. French, 165 Mo. 430, 65 S. W. 769; Falvey v. Hicks, 315 Mo. 442, 286 S. W. 385.] Henry B. Miller, the father, having died April 2, 1928, and plaintiffs having commenced their action October 12, 1928, it is obvious that they are not barred. When Henry B. Miller, by warranty deed, in which his second wife joined, sold the land in suit and other land to E. J. Williams, he conveyed to Williams only his life estate of curtesy in the ten-acre tract. Defendants, and all intermediate grantees, acquired no greater estate in that tract, and that estate terminated with the death of Miller. In the view which we take of plaintiffs' right the notice examined in paragraph II was of no aid to those rights.

Finding no reversible error, the judgment is affirmed. *Cooley, C.,* concurs; *Westhues, C.,* not sitting.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur.