BRITTON A. HILL, Respondent, v. A. N. F. TISSIER, ET AL., Appellants.

### March 4, 1884,

1. NOTICE. — The constructive notice of an adverse title to realty imparted by the records is not, under section 2259 of the statute, sufficient to preclude a recovery by an occupant for improvements.
2. —— Positive knowledge and knowledge of facts which put a person upon inquiry, are both actual notice.
3. —— PRACTICE. — Questions of actual notice are for the jury.

APPEAL from the St. Louis Circuit Court, LUBKE, J. *Affirmed.*

CHARLES E. PEARCE for the appellants: "Good faith" and "notice" can not co-exist. —*Lee* v. *Bowman,* 55 Mo. 400. The "notice" contemplated by the statute is not written notice, or direct and positive information, but anything calculated to put a man of ordinary prudence on the alert. And if that clue is furnished, he is chargeable with knowledge of all those facts to which that clue, if properly followed, would have led. — *Lee* v. *Bowman,* 55 Mo. 400; 2 Sudgen on Vendors, 762, note and cases; 1 Story Eq., sects. 395, 397, 399, 400. The record of a deed is notice. — Story Eq., sect. 403; 3 Washb. on Real Prop.

319 *et seq.; Bales* v. *Perry*, 51 Mo. 453; *Digman* v. *Mc-Cullum*, 47 Mo. 372.

H. D. Wood for the respondent: Constructive notice which the law implies from the record of a deed, is not sufficient to preclude an occupant from recovering for improvements. — Sedg. & Waite, Trial of Titles to Land, par. 696; *Dothage* v. *Stuart*, 35 Mo. 251; *Russell* v. *DeFrance*, 39 Mo. 506; *Whitney* v. *Richardson*, 31 Vt. 300; *Green* v. *Dixon*, 9 Wis. 532; *Hatcher* v. *Briggs*, 6 Ore. 31. A person in possession who believes and has good reason to believe that his title is good, is acting in good faith so as to entitle him to claim the benefit of his improvements, and he will be presumed to be acting in good faith until the contrary appears. — *Stark* v. *Starr*, 1 Sawy. 15; Sedg. & Waite, Trial of Titles to Land, par. 694; Kent J. in *Smith* v. *Lorillard*, 10 Johns. (N. Y.) 356. The question whether the occupant erected the improvements in good faith, believing he had title, is one of fact for the jury or the court sitting as a jury. — Sedg. & Waite, Trial of Titles to Land, par. 694; *Powell* v. *Davis*, 19 Texas, 380.

Bakewell, J., delivered the opinion of the court.

The statute provides (Rev. Stats., sects., 2259 *et seq.*), that " if a judgment of dispossession shall be given in an action for the recovery of possession of premises, or in any real action, in favor of a person having a better title thereto, against a person in the possession, held by himself or by his tenant, of any lands, tenements, or hereditaments, such person may recover in a court of competent jurisdiction, compensation for all improvements made by him in good faith, on such lands, tenements, or hereditaments, prior to his having had notice of such adverse title. The plaintiff, in his petition shall set forth the nature of his title, the length of his possession, and the kind and value of the improvements made, and shall also aver therein that he entered into the possession of the land, believing that he had good

title thereto, and that he made the improvements specified in the petition in good faith, under the belief that he had good title to the land, and shall be verified by his affidavit thereto annexed.'' It is then provided that an injunction may issue to stay execution until the petition for compensation shall have been heard; and that, if upon trial the finding is for the occupying claimant, and his improvements exceed in value the value of the land aside from the improvements, the court may order that the occupying claimant shall, by a time to be specified in the order, take the land and pay the ascertained value thereof to the plaintiff, and in default of such payment, the plaintiff shall take possession of the land, discharged from all claim of such occupying claimant; and if the money is paid, the owner of the land shall execute to the occupying claimant a conveyance with general warranty. There is a provision for a different order, where the improvements do not exceed in value the value of the land.

Aloysius N. F. Tissier recovered in ejectment against Hill a lot of fifty feet on Sixth Street, near Poplar, in St. Louis, on which were erected certain buildings used for a foundry. This action was begun by Hill, under the above statute, against Tissier and the sheriff, on the theory that the value of the improvements erected in good faith by Hill, exceeds the value of the land without them. The cause was tried without a jury. The court found for plaintiff, and that the improvements are worth more than the land, and the land worth $5,000, which sum plaintiff was directed to deposit in court to use of defendant Tissier, together with costs, within ten days, failing in which the petition was to be dismissed, and the temporary injunction that had been granted, dissolved, and defendant discharged of all claim of plaintiff. Plaintiff made the deposit according to the terms of the order, and there was a final decree making the injunction perpetual and directing defendant

Tissier to make plaintiff a deed for the lot in question. From this judgment Tissier appeals.

It appears from the testimony, that the lot in question, which is in the Chouteau mill tract, was assigned to Henry Chouteau in partition of the estate of Auguste Chouteau, and the title was derived by sundry mesne conveyances, all duly recorded, to Joseph F. Tissier. Tissier died in 1856, in St. Louis, leaving defendant Aloysius N. F. Tissier as his only child and heir. There was administration on the estate of Joseph F. Tissier, which was finally settled in 1876, and the balance in the administrator's hands then paid Aloysius, who had attained his majority. Aloysius N. F. Tissier resides in France; but has an agent here who attends to his affairs, and who put the property in question into the hands of the real estate agents for sale about 1878. These agents put up signs upon the fence surrounding the lot, stating that it was for sale, and referring would-be purchasers to them in the usual way. The lot was below the grade, and its value, without the improvements put upon it by Hill, was variously estimated at from $60 to $125 a foot.

One Joseph Tessier died in 1873, leaving a will, by which he devised all his property to his widow Mary. This will was duly proved in the proper office in St. Louis, where Tessier had resided and where he died. There was no administration upon his estate. The lot, at the time of the transaction in question, was assessed to Joseph F. Tessier, and had been so marked on the plat-books in the assessor's office in St. Louis through a series of plat-books running back fifteen years. The testimony is, that these plat-books are made out once every three years, and that the assessor is required by law to indicate on the plat of the lot any recorded conveyance changing the title; and that this is done in red ink.

In April, 1880, plaintiff Hill was one of the directors and

the treasurer of the Polytechnic Iron Works. The company desired to get a suitable lot on which to erect a foundry, and attention was directed to the lot in question, which seemed suitable. At this time, Mr. Hill was in very bad health, confined to bed five days out of seven, and generally unfit to attend to business. Mr. Hill is a lawyer, thoroughly versed in the law of real estate, and in active practice in St. Louis from 1839 to a period shortly before the date of these transactions, when he was obliged by ill-health to restrict his practice. He had associated with him a young lawyer named Wolff. Wolff had had considerable experience in real estate matters, having been for years in the office of his father, a well known real estate agent. Wolff was quite a young man, but understood the theory of making abstracts of title, and was familiar with the law and practice in regard to records affecting real estate. Hill, Wolff and W. P. Hill, a son of plaintiff, visited this lot in April, 1880. They all swear that there was no sign on it indicating that it was for sale. Plaintiff Hill desired his partner Wolff to examine the title to the property. Wolff thought that Hill's purpose was to take a lease of the property for ten years, with right of renewal. He went to the assessor's books, where he found the property assessed, as we have said, to Joseph F. Tessier. He examined the plat-books in the assessor's office for fifteen years back, and found no change. He then went to the clerk's office of the probate court, where he found the will of Joseph Tessier and no administration, as has been stated. He then examined the indexes in the recorder's office for six or eight years, and finding no conveyance of the property, he reported to Mr. Hill that the title was vested in Mary Tessier, and that he thought he would be perfectly safe in taking a lease from her. Hill was too ill to make any examination himself, and swears that he trusted entirely to Wolff, and confidently believed that Mary Tessier had a good title to the property. Mary Tessier was found by the directory. She was a poor

and illiterate old woman, of good sense, but infirm, and living with her daughter in one of two small houses which she owned, and which were far from this property. Hill went to see her, and was told by her that she believed she owned some unimproved property in the locality in question; that she had been called upon to pay taxes upon it, but had no money to do so, and that she was too old to attend to it. Hill, in perfectly good faith, as he swears, having never heard of any Tissier, or Tessier, before, and having no doubt that Mary Tessier was the devisee of Joseph F. Tessier, in whose name this lot was assessed, and that she alone had any claim to the property, took from Mary Tessier a lease to him for the property for fifty years, renewable in certain terms. The rent reserved was $12.50 a month; and this rent Hill paid to his lessor until served with notice of the ejectment sued by A. N. F. Tissier, which summons was the first notice he had that any one but Mary Tissier claimed the property.

The lease was made out to Hill for his protection, as he was advancing all the money for the foundry business. He took possession at once, and erected upon the place a brick building, which, with the machinery put into it, cost about $9,500. The mere cost of the building being $5,500.

One witness, who lived in the neighborhood, swears that there was a notice of a real estate agent that the lot was for sale remaining upon the Sixth Street fence of the lot at the time the fence was taken down, and for years before that. She is alone in this statement. One other witness "thinks he saw such a notice." But the two Hills, Wolff, and the builder who removed the fence, swear that they saw no such notice, and that they must have seen it, had it been there.

Before the action of ejectment, Mary Tessier conveyed the lot to her daughter, in fee, subject to Hill's lease; and during this action this daughter conveyed such fee to Hill, with the right to compensation for improvements.

Hill paid the taxes for 1880. He inquired for taxes against the property when he went to pay his other taxes, and no bill, except for 1880, was presented to him.

The court gave the following declarations of law, of which the first was given at the instance of plaintiff, and the others at defendant's instance : —

1. "If plaintiff erected the building on the lot in controversy in good faith, believing that Mary Tessier was the owner of said lot, and without notice of the title of A. N. F. Tissier, and without information that would have led him to a discovery that said Tissier was the owner, then he is entitled to relief.

2. "The phrase ' good faith,' as used in the provision of the statute on which this suit is founded, contemplates an absence of equitable notice ; and the court further declares the law that good faith and notice are incompatible and can not co-exist.

3. "If, prior to the erection of the improvements mentioned in the petition, plaintiff had notice of the adverse title of defendant Tissier, then plaintiff can not recover in this cause.

4. "The court declares the law to be that, in this cause equitable notice to the plaintiff of defendant Tissier's adverse title to the land herein conveyed, is a bar to plaintiff's claim for improvements, without reference to his good faith and belief, if said equitable notice was prior to plaintiff's entry and making of said improvements."

Of its own motion, the court declared the law to be, that "constructive notice of the recorded deed to the ancestor of defendant Tissier, is not ffisucient to defeat the present action."

Defendants asked a declaration of law, which the court refused, to the effect that, if the deed in evidence, of date August 30, 1851, by which Joseph Felix Tissier acquired title to the land in controversy was duly acknowledged and

recorded on September 10, 1851, in the proper office, then from said last date, plaintiff had notice of the contents of that deed.

Constructive notice of an outstanding title in land, is the notice imparted by the registry. Knowledge of such facts as should induce inquiry, and as would lead to inquiry in the case of an ordinarily prudent man, and which can not be neglected without a voluntary closing of the eyes, and conduct inconsistent with good faith, is actual notice. Direct and positive knowledge, and knowledge of facts to which one chooses to be blind, lest following the inquiry up should lead to disclosure, are, both of them, actual notice ; and do not differ in kind, but only in character of the proof. The question of actual notice is one for the jury. *Master-son* v. *Railroad Co.*, 5 Mo. App. 64.

That Tissier had a good title, that Mrs. Tessier had no title at all, and that Hill had constructive notice of this, is indisputable. But, that constructive notice of an adverse title which the law implies from the records, is not sufficient to preclude a recovery for improvements. This constructive notice is not the notice of adverse title which the statute means, and is not necessarily inconsistent with good faith. So it is held whenever the powers of a court of equity are invoked to relieve the innocent defendant in ejectment, as well as under statutes such as the one under which the present action was begun. A *bona fide* claimant is one who supposes he has good title and knows of no adverse claim ; and the fact that strict examination of the records might show his title to be void does not prevent him from being an innocent claimant. To hold that the existence of a superior record title would deprive of his improvements one who had purchased under an honest mistake, would be to disregard the equity of the statute, and practically, to repeal it. The statutory provisions under consideration were made to meet just such a case. *Whit-*

*ney* v. *Richardson*, 31 Vt. 300 ; *Morrison* v. *Robinson*, 37 Pa. St. 456 ; *Lee* v. *Bowman*, 55 Mo. 400 ; *Dothage* v. *Stuart*, 35 Mo. 251.

The question of notice, was, as we have said, for the trier of the fact. There is testimony to support the finding, and we have no right to disturb it.

The judgment is affirmed. All the judges concur.