WAYMAN CROW ET AL., Appellant, v. GEORGE ANDREWS, Defendants; JOHN C. KINNAN, Interpleader.

**Kansas City Court of Appeals, January 10, 1887.**

1. ATTACHMENT — PURCHASER IN GOOD FAITH NOT AFFECTED BY FRAUD OF SELLER—CASE ADJUDGED.—Where there is no evidence that a creditor, purchasing a stock of goods from his debtor, was anything but a *bona fide* purchaser, as in this case, and where there is no evidence that he was guilty of any fraud, or was a party to, or knew of any contemplated fraud on the part of his debtor, he could sell and pass a good title to *any one*, whether ignorant or aware of the fraud on the part of the person selling to him. (An innocent indorsee of a promissory note may pass a good title to one aware of its vice.)

2. ——— GOODS PURCHASED FOR BENEFIT OF FRAUDULENT DEBTOR—
SUFFICIENCY OF EVIDENCE OF SUCH PURCHASE—CASE ADJUDGED.
Where there is no sufficient evidence to authorize a jury to find
that the goods were purchased by the vendee of a *bona fide* pur-
chaser, for the benefit of the persons selling to such a purchaser,
nor of a conspiracy between such a vendee and such persons so
selling to such vendee's name for a fraudulent
purpose, as in this case, unless the *bona fides* of the transaction
between them can be succesfully attacked, it is a valid one ; even
if such persons are related to each other. Fraud may be proved
by *circumstances,* but mere *suspicion* will not avail to destroy a
title.

APPEAL from Ray Circuit Court, HON. GEORGE W.
DUNN, Judge.

*Affirmed.*

The case and facts are stated in the opinion of the
court.

C. T. GARNER & SON and LAVELOCK & LAVELOCK,
for the appellants.

I.   It is the settled law of this state that declara-
tions of the party in possession of the property in con-
troversy are admissible in evidence to explain the
character of the possession. 2 Whart. Evid. (2 Ed.)
sect. 1166 ; *Darrett v. Donnelly,* 38 Mo. 492 ; *Burgert
v. Borchert,* 59 Mo. 87. The statement of one of the
debtors, that he never consented to sale of the partner-
ship goods, and protested against possession being given
to the purchaser, was clearly admissible, and the court
erred in excluding it. The law does not authorize the
sale of the entire stock of goods, made without the con-
sent and against the protest of one of the partners.

II.   The law demands that the claimant of goods
be a purchaser for a valuable consideration, and *without
knowledge of the bad intent of the vendor,* and he must
pay the price of the purchase before ascertaining the
fraudulent purpose, which must be followed by an ac-
tual, immediate, notorious, and unequivocal change of

possession. *Arnhart v. Hartwig*, 73 Mo. 488; *Dough-erty v. Cooper*, 77 Mo. 532. Therefore, the *first* and *second* instructions, given at the instance of the inter-pleader, are manifestly erroneous. And so as to the *third* instruction as to the participancy in the fraud. The instructions asked by plaintiffs and refused by the court, contain the true principles of law applicable to this case, and there was abundant evidence to support them. *Claflin v. Rosenberg*, 42 Mo. 448; *Lessen v. Herriford*, 44 Mo. 323; *Bishop v. O'Connell*, 56 Mo. 158; *Wright v. McCormick*, 67 Mo. 426; *Stern v. Henley*, 68 Mo. 262.

III. There must be a change of possession, and that change be open, notorious, unequivocal, such as to give notice of the sale. A vendee of a stock of goods cannot, after the purchase, leave such stock of goods under the control and in the possession of the vendor. If he does so the sale will be, as to creditors, fraudulent. Cases cited *supra.*

J. L. FARRIS, J. E. HALL, JOHN W. SHOTWELL and J. R. HAMILTON, for the respondent.

I. The declarations as to possession which were offered are only hearsay, and cannot affect the title of the vendee. *Stewart to use, etc., v. Thomas, Adm'r*, 35 Mo. 222. So the statement of one of the partners that he never consented to the sale and protested against pos-session being given was not admissible, being made more than a month after the sale and delivery of the goods to a *bona fide* purchaser. A sale of goods made by *one* of the partners, *during the existence of the partnership,* is valid as against the firm.

II. The instructions given for respondent, inter-pleader, taken in connection with those given for appellants, covers the entire law of the case, and are based on the evidence at the trial. Those refused to appellants were properly refused for the reason that

there is no evidence that respondent purchased the goods for the benefit of one of the partners, or that he conspired with the partners to purchase the goods in his own name to hinder and delay the creditors of the partners. So the instruction as to *possession* was properly refused, as being indefinite and misleading. The instruction does not define the *kind* of possession intended, whether as owner or clerk.

ELLISON, J.—This is an action commenced on the thirtieth day of January, 1885, in the Ray circuit court, by attachment, in favor of appellants against James and George Andrews, alleging fraud in the sale of their property to one T. R. Gant and others. By virtue of a writ of attachment issued in said cause, the sheriff of Ray county, on the thirty-first day of January, 1885, levied upon, and afterwards, by order of the circuit court, sold the goods in controversy. At the plea term of said cause, in June, 1885, on the fourth day of the month, respondent, John F. Kinnan, filed his interplea, claiming the ownership of the goods in controversy. The issues were tried by a jury and found for the interpleader. Plaintiffs appeal.

On the trial, respondent, to sustain the issues on his part, introduced several witnesses whose testimony tended to prove that George Andrews and James Andrews, merchants at Vibbard, Ray county, Missouri, doing business under the firm name of Andrews Bros., had purchased of one T. R. Gant, a portion of the stock of goods attached on the second day of January, 1884, and the remainder had been bought of appellants and other wholesale merchants; and at the time of the sale the Andrews Brothers executed a chattel mortgage on said stock of goods to T. R. Gant to secure the payment of their promissory note to him for $1,267.80, due one day after date, which was part of the consideration for said stock of merchandise.

The Andrews Brothers continued in business at

Vibbard as general merchants from the second day of January, 1884, until the twenty-fourth day of December, 1884, and T. R. Gant, who then resided in Kansas, on learning that the Andrews Brothers were in failing circumstances, returned to Vibbard to collect his debt, and the day last named he purchased the entire stock of merchandise of said Andrews Brothers, without invoicing the same, for $1,369.30, this being the amount due on his note, the payment of which was secured by the chattel mortgage on the said stock of goods. T. R. Gant locked up the house, and in a few hours sold the same stock of goods to respondent, the father-in-law of James Andrews, for $1,369.30, who executed his note to said Gant for this sum, and secured it by a chattel mortgage on other property, which the respondent has paid off. The respondent took immediate possession of the store and employed his son-in-law, James Andrews, and a Mr. Miller, formerly a clerk for Andrews Brothers, to carry on and manage the business, which continued until the thirty-first day of January, 1885, when the stock of goods and building were levied on and the store closed by the attachment proceedings commenced by appellants and others. The respondent was a farmer and resided about three miles from Vibbard, and did not stay in the store, but was there occasionally. The stock of goods when sold for cash by the sheriff at public auction brought about $1,365.00.

Plaintiffs offered to prove declarations made by James Andrews in January, 1885, after the sale to Gant while he was in possession of the store as clerk for interpleader. Plaintiffs also offered to prove that George Andrews after the sale to Gant, and on January 31, had stated that he never consented to the sale of the goods, but always protested against it. Both these offers were rejected by the court.

The only reason alleged for the admission of this testimony is, that it is a declaration of the party in possession, and is explanatory thereof. There is, however,

no evidence whatever that George Andrews was in possession at the time of his declaration, and for that reason alone, the offer as to him was properly rejected. The offer as to both the Andrews Brothers was properly rejected, as their vendee had entered into possession prior to the alleged admission. *Stewart v. Thomas*, 35 Mo. 202; *Weinrich v. Porter*, 47 Mo. 293.

The declaration of James Andrews was properly excluded for the additional reason that plaintiffs' evidence, as we gather from their abstract, that James Andrews sold the stock of goods to T. R. Gant, in satisfaction of Gant's debt against him, which was secured by chattel mortgage on the goods, that he turned them over to prevent a sale under the mortgage at public auction, and that Gant took possession of the goods under such transfer.

There is no evidence tending to show that Gant was guilty of any fraud, or was a party to, or knew of any contemplated fraud on the part of the Andrews brothers. There is no evidence tending to show that Gant was anything but a good faith purchaser of the stock of goods. Under such a state of case, it may be admitted that the interpleader was aware of the fraudulent object the Andrews brothers may have had in view, in making the sale to Gant. If Gant was a *bona fide* purchaser he could sell and pass a good title to *any* one, whether ignorant or aware of the fraud on the part of Gant's vendors. *Funkhouser v. Lay*, 78 Mo. 458. Were this not the law, an innocent holder might find an embargo on his property; that is, he would be restricted in his sales to those who knew nothing of the source of his title. An innocent endorsee of a promissory note may pass a good title to one aware of its vice. Otherwise its commercial value would be destroyed in the hands of a good-faith holder.

For the same reason we are relieved of the necessity of passing on the alleged errors in giving and refusing instructions, except numbers five and six refused for

plaintiffs. With the exception of these, the instructions are drawn as though Kinman was the immediate vendee of the Andrews brothers, whereas, he is the vendee of a *bona fide* purchaser from the Andrews brothers. It is of no concern to any one, save *Gant's* creditors, if he has any, whether interpleader took the statutory possession of the goods or not.

Instructions numbers five and six are as follows :

"5. That if the jury believe from the evidence that the interpleader, Kinman, purchased the stock of goods from T. R. Gant for the use and benefit of James Andrews, and for the purpose of hindering or delaying the creditors of said James Andrews in the collection of their debts against the said Andrews, then such purchase was fraudulent, and the jury will find on this interplea for Crow, Hargadine & Company."

"6. The jury are instructed that if they believe from the evidence that the interpleader, Kinman, conspired and colluded with the Andrews Brothers, or James Andrews, to purchase said stock of goods from T. R. Gant, in the name of the said Kinman, interpleader, for the purpose of hindering or delaying the creditors of the Andrews Brothers in the collection of their debts, they will find for the plaintiffs, Crow, Hargadine. & Company, though they may further believe from the evidence that T. R. Gant did not participate in said fraud."

These instructions would have been proper if the evidence justified them. There is not sufficient testimony to authorize a jury to find that the goods were purchased by Kinman for the benefit of Andrews Brothers. Nor that there was a conspiracy between the Andrews Brothers, or either of them, and Kinman, to take the goods in the latter's name for a fraudulent purpose. It is true Kinman is a relative of James Andrews, and that the evidence tended to show that on the day of his purchase of the goods from Gant he purchased of the Andrews Brothers real property at

less than its actual value. And that he and the father of the Andrews Brothers took an assignment from them in trust to secure a debt due the father. But there is no attempt made to show that the debt was not real, or that more property than was reasonably sufficient was assigned to secure it.

The real estate purchased by Kinman is not in this controversy, and the only reason for its coming into the evidence would be that it is a circumstance which, when properly connected with something more, would tend to show a fraudulent combination. But can it be said that the fact of the purchase of a piece of real estate at less than its value is sufficient, without more, to justify a verdict that there was a conspiracy concerning the purchase of a stock of goods from another party who is the *bona fide* owner? Fraud may be proved by circumstances, it is true, but mere suspicion will not avail to destroy a title. The evidence given, if supplemented by something additional, might very well have justified the instructions, but as we find it, as presented by plaintiffs, it did not so justify them.

The judgment is affirmed. All concur.