C. F. HELLWEG, APPELLANT, v. HARRY BUSH ET AL. and THE STATE LIFE INSURANCE COMPANY (INTERVENOR).—74 S. W. (2d) 89.

Springfield Court of Appeals. August 24, 1934.

McNatt & McPherson and Herman Pufahl for appellant.

J. S. Davis and Royle Ellis for Harry and Alta Bush, respondents.

George H. Bachelor and James E. Sater for The State Life Insurance Company, respondent.

BAILEY, J.—This action was instituted in the Circuit Court of Barry County to cancel the record of a certain marginal release of a deed of trust held by plaintiff upon the lands of defendants Harry Bush and Alta Bush. The State Life Insurance Company, as the holder of a subsequent deed of trust upon the same lands, was permitted by the court to intervene and be made party defendant. The cause was sent on a change of venue to the Circuit Court of Stone County, where the case was tried before the court and resulted in a decree dismissing plaintiff's bill and cancelling plaintiff's said deed of trust as well as a prior deed of trust, and adjudging the deed of trust held by The State Life Insurance Company to be a valid and subsisting first lien against said lands owned by defendant Harry Bush and Alta Bush. Plaintiff has appealed.

This is a suit in equity and will be tried in this court de novo upon the record. It appears that defendants Harry Bush and Alta Bush, his wife, were the owners of a certain eighty acres of land in Barry County, Missouri, and on the 5th day of July, 1924, made and executed a deed of trust on said land securing to one John E. Groh their one promissory note in the sum of $1400, due July 5, 1929, and

hereinafter referred to as the "Groh Mortgage." This deed of trust was recorded in the office of the recorder of deeds of Barry County, July 18, 1924. Thereafter, on June 9, 1928, defendants Bush executed to the Emery Hill Investment Company their promissory note for $1800, and secured same by a deed of trust on said land of even date therewith, and recorded same in said County of Barry June 23, 1928. This note was afterward purchased for full value by Sophia Hellweg and later assigned by her to plaintiff C. F. Hellweg and will hereinafter be referred to as the "Hellweg Mortgage." This Hellweg mortgage purported to be a first lien against the property, although the Groh mortgage had not been released at the time Sophia Hellweg purchased the $1800 note. The circumstances under which the Hellwegs acquired their note and mortgage are substantially as follows: A corporation known as The Emery Hill Investment Company, managed and dominated by its president, Emery Hill, was located at Stotts City, Missouri, and was engaged in the business of making farm loans and selling them to investors. Plaintiff O. F. Hellweg, in behalf of himself and his mother Sophia Hellweg, had purchased several loans from said company at various times prior to the purchase of the Hellweg mortgage herein, and at the time of the latter purchase, owned the secured note of one Hugo Schmelling, in the amount of $2000. On the 31st of October, 1928, Emery Hill wrote C. F. Hellweg, then living at Blackwell, Oklahoma, informing him that the Schmelling note would not be renewed and submitting to him the proposition of re-investing in a "corking good loan" of Harry Bush, which was for $1800 and enclosing the loan papers and a check for the difference between that loan and the Schmelling loan. No abstract of title was furnished at the time, but C. F. Hellweg, on behalf of Sophia Hellweg, accepted the loan without any further investigation, and the note was assigned to Sophia Hellweg. This Hellweg loan, according to defendant Bush, was given to take up the Groh loan; however, this was not done and the Groh loan remained a first lien upon the land at the time plaintiff purchased the $1800 note. Thereafter the interest on the Hellweg mortgage was paid regularly through The Emery Hill Investment Company, to July 1, 1931, but no further payments either of principal or interest were made after that time. These two deeds of trust remained subsisting liens against the land until in August, 1929, and during all that time both plaintiff and defendants Bush were in ignorance of the fact that the Groh mortgage was unreleased. Sometime in July, 1929, or before, Emery Hill falsely stated to Harry Bush that the $1800 note and deed of trust held by Sophia Hellweg had been lost or destroyed. The Bushes did not know this note had been assigned to the Hellwegs but evidently supposed it to be owned by Emery Hill. After these representations had been

made, Emery Hill, on July 26, 1929, made a statutory affidavit to the effect that he was the assignee of the Hellweg note and that the note had been paid and delivered to the makers thereof, and on the same day the defendant Bush, relying on said representations, made a statutory affidavit that said note had been lost or destroyed and could not therefore be produced and that it was not in the possession of any person having a lawful claim to same. At about the same time, and as a part of the same transaction, the Bushes made and executed to the Emery Hill Investment Company, their seven promissory notes aggregating $1600 which notes were secured by what purported to be a first trust deed on their said lands. On the same date defendants Bush executed their promissory note for $200 to the Emery Hill Investment Company, due in one year and secured by what purported to be a second deed of trust on said land. These notes, aggregating $1800, were given in lieu of the $1800 Hellweg mortgage which the Bush defendants apparently believed to have been lost or destroyed, and they thereafter paid no interest on the Hellweg mortgage. On August 9, 1929, based on the affidavits above referred to, the relase of the Hellweg mortgage was effected and on the same day, P. J. Hill, as assignee of the beneficiary, executed a marginal release of the Groh mortgage, the original first mortgage, in words and figures as follows: " 'I hereby certify that the within described note was produced, fully assigned and I marked it cancelled on the face.'

"Witness my hand and seal this 9th day of August, 1929. Calvin E. Henderson, Recorder of Deeds.

"Beneath the foregoing release and certificate of the recorder appears the following: 'As to loss of notes, see affidavits hereto attached. Attest, Calvin E. Henderson, Recorder of Deeds.' "

The recorder testified that there were no affidavits attached to the record of the deed of trust and that there had been none since he had been in office; that the pages did not indicate that there had ever been any affidavits attached thereto; that the writing referring to the affidavits was not as clear as the other words appearing on the margin of the record relative to the release and that from the dimness of it there might have been an attempt to erase it. These releases were made, apparently, to clear the way for the $1600 mortgage which at that time had been executed and was in the hands of the Emery Hill Investment Company. The latter company submitted the $1600 mortgage for sale to the defendant, The State Life Insurance Company. After the abstract of title had been examined by the Insurance Company's attorneys and an opinion had been rendered to the effect that the $1600 mortgage was a valid and subsisting first lien against the lands, the Insurance Company approved the purchase of the $1600 mortgage, took a written assignment there-

of, dated August 6, 1929, and filed same for record September 10, 1929, after remitting the required amount in payment of the loan, about September 6, 1929.

It further appears that neither plaintiff nor his mother had any knowledge that there had been an attempt to release the Hellweg mortgage until the latter part of December, 1931, or the first part of January, 1932, at which time plaintiff heard rumors of irregularities with regard to the Hill Investment Company's loans. On January 5, 1932, plaintiff went to Cassville in Barry County and upon investigation learned of said attempted release. After acquiring such knowledge he returned to Oklahoma, and, according to his testimony, realizing there would probably be litigation over the matter, and that his mother, then past eighty years of age, would be involved, purchased his mother's note, in which he himself had a very small interest, had the note indorsed to himself, shortly afterward returned to Missouri and instituted this suit. Certain other facts necessary to an understanding of the issues will be referred to hereinafter.

In the assignment of errors it is charged that the trial court erred in holding that the fraudulent release of the $1800 Hellweg note through the false affidavits of Hill and Bush constituted a valid release of said mortgage. Before considering that question, however, it is necessary to dispose of the point made by defendant State Life Insurance Company to the effect that plaintiff, having purchased the $1800 note secured by said Hellweg mortgage after he had learned of the fraudulent release and the recording of the State Life Insurance mortgage, is thereby prevented from seeking relief in a court of equity. In other words, defendant invokes the rule that, "he who takes with notice of an equity, takes subject to that equity." [Major Adm. v. Buckley et al., 51 Mo. l. c. 231.]

The rule more fully stated is that where one acquires property, or an equity therein, with notice of a *prior* equity, he takes subject to that equity. By prior equity, we think, is meant one known to be in existence, either actually or constructively, at the time the equity was purchased, provided, however, there was no intervening innocent purchaser of such equity. Otherwise the foregoing rule would be in conflict with the rule equally well settled, that, "a man who is a purchaser with notice himself from a person who bought without notice, may protect himself under the first purchaser. The reason is to prevent stagnation of property, and because the first purchaser, being entitled to hold and enjoy, must be equally entitled to sell." [Bumpus v. Platner, 1 Johns Ch. 213, by Chancellor Kent; Funkhouser v. Lay, 78 Mo. 458; McMurray v. McMurray, 258 Mo. 405, 167 S. W. 513.]

Plaintiff's mother was unquestionably an innocent purchaser in so

far as the Insurance Company's mortgage is concerned. Under the authority of those cases there is, therefore, no question but that plaintiff in this case occupies the same position as did his mother from whom he purchased the $1800 note.

Under the statutes of this State, and by a long line of decisions, the assignee of a holder in due course of a note, secured by a mortgage or deed of trust, himself free from fraud, is vested with all the right, title and interest possessed by his assignor in such mortgaged property. [Sec. 2686, R. S. 1929; St. Louis Mut. Life Ins. Co. v. Walter, 46 S. W. (2d) 166; Hagerman v. Sutton, 91 Mo. 519, l. c. 531, 4 S. W. (2d) 73.]

The next question in order then, is a consideration of the rights acquired by Sophia Hellweg at the time she purchased the $1800 note from the Emery Hill Investment Company. She purchased for full value and in good faith before maturity and without notice of any defect in her title to the note. She was therefore a holder in due course and entitled to all the protection such a holder enjoys. As assignee of the note secured by the deed of trust she took her mortgage lien subject only to the Groh mortgage, which was on record at the time of her purchase. The Groh mortgage was, however, thereafter released of record, whether fraudulently or otherwise does not appear, and therefore the Hellweg mortgage should now stand as a first lien against the property unless the fraudulent release thereof lets in the equity of The State Life Insurance Company, as the trial court held. The release of the Hellweg mortgage on the margin of the record was made, as heretofore stated, on affidavits of Harry Bush and Emery Hill relative to the loss and payment of the note. Emery Hill was not the *cestui que trust* but signed the affidavit as assignee of the beneficiary. The statute requires that if the notes secured by the deed of trust are not presented for cancellation for the alleged reason that they have been lost or destroyed, the recorder, before allowing any entry of satisfaction, "shall require the *cestui que trust* named in the mortgage or deed of trust desired to be released or his legal representatives, to make oath in writing, stating that the note or other evidences of debt named in the mortgage or deed of trust sought to be released have been paid and delivered to the maker thereof etc." [Section 3078, Revised Statutes of Missouri, 1929.] Therefore the release in this case was not in accordance with the provisions of the statute and, to say the least, was irregular. But more than that, had the release been made by the original beneficiary named in the deed of trust, it would not have been valid after the assignment of the note secured by the deed of trust. After assignment, the *cestui que trust* has no power to make a release. [Hagerman v. Sutton, 91 Mo. 519, l. c. 533; Cooper v. Newell, 263 Mo. 190, l. c. 199, 172 S. W. 326; Lord v. Schamloeffel, 50 Mo. App. 360.]

Such purported fraudulent release was therefore no protection even to a subsequent innocent purchaser for value. [Stratton v. Cole, 203 Mo. App. 257 (and cases cited), 216 S. W. 976; Joerdens v. Schrimpf, 77 Mo. 383.]

As in practically all these cases we are dealing with a situation where one of two innocent persons must suffer because of the fraud of another. In such cases, where the equities are equal in all respects save that of time, the first in point of time should prevail. [21 C. J. 209, Art. 210.]

It is urged, however, that because the State Life Insurance Company recorded its assignment, and neither plaintiff nor his assignor filed for record any assignment of their note and mortgage, the State Life Insurance Company therefore has the superior equity. Many cases from other States are cited in favor of this theory. An examination of those cases show, almost without exception, that they are based upon statutes of those particular States providing for or requiring the recording of assignments of mortgages. We have no such statute in this State. Section 3039, Revised Statutes of Missouri, 1929, provides for the recording of all instruments conveying real estate. The simple assignment of a note or deed of trust securing same, is not required to be recorded and the recording thereof cannot be regarded as constructive notice of the contents thereof. [Heintz v. Moore, 246 Mo. 226, l. c. 232, 151 S. W. 449.]

We are therefore unable to agree with the suggestion that the recording of the assignment of the mortgage by The State Life Insurance Company had the effect of securing to it a superior equity to that of plaintiff, although he placed no assignment of record. We cannot refrain from stating however, that if our statute did provide for the recording of assignments of mortgages where the notes secured thereby have been assigned, the possibility of fraudulent releases, such as we now have under consideration, would be most effectively eliminated.

Two other questions are referred to in the briefs but we find no evidence that would justify a consideration of such issues. One is in regard to agency of Emery Hill as to plaintiff. The other is that The State Life Insurance Company was subrogated to the rights of Groh, because the money of the Life Insurance Company went to the release of that mortgage. There is no substantial evidence sufficient to establish either contention and we do not think the case can be decided on such theory. It is our opinion the judgment and decree should be reversed and remanded with direction to enter a decree cancelling the release of the $1800 Hellweg mortgage and establishing said mortgage as a first lien against said real estate. It is so ordered. *Allen, P. J.,* and *Smith, J.,* concur.