**M. E. HATCHER, Plaintiff-Respondent,**

**v.**

**Melvin HALL, Defendant-Appellant,**

**and**

**Gilbert F. Willard, Defendant.**

No. 7482.

Springfield Court of Appeals.

Missouri.

July 13, 1956.

James L. Paul, Pineville, for defendant-appellant.

Herbert Douglas, Neosho, for plaintiff-respondent.

STONE, Judge.

In this action for a declaratory judgment [Sections 527.010 to 527.140, incl.], plaintiff seeks a determination of rights and status under a written agreement between C. E. and Helen Whartenby, as "lessors," and Melvin Hall (one of the defendants herein), as "lessee," dated July 1, 1941, and recorded in the office of the Recorder of Deeds of McDonald County, Missouri, on September 20, 1941. (Except as otherwise specifically stated, statutory references herein are to RSMo 1949, V.A. M.S.) By this agreement, the "lessors," for a recited consideration of "One Dollar and other valuable consideration," purported to "lease, grant, bargain and sell unto the lessee the exclusive right to furnish all gasoline and oil products to be sold at a certain filling station" on a described tract (hereinafter called "the tract") at

Lanagan, McDonald County, Missouri (then owned by the Whartenbys and presently owned by plaintiff), "for a period of ten years from the date of this instrument," with the further provision that "at any time said station is no longer used * * * to *despence* motor fuel and lubricants, then this agreement shall suspend during such discontinuance and if re-opened then this agreement shall be reinstated and the time that such station was not being operated shall not run against this lease." By its terms, the agreement was "binding upon any and all persons or corporations which take possession of said premises" and granted to the "lessee * * * prior rights to renew this agreement for a like period of time." Since the case was tried below and has been presented here on that theory, we assume for the purposes of this opinion (*without, however, so deciding*) that the agreement was an instrument "whereby * * * real estate may be affected" [Section 442.380], and that the obligation, which it purported to impose, might run with the land; and, adopting the terminology of the parties, we hereinafter refer to the agreement as "the lease."

Defendant Hall, a distributor of Phillips "66" products, supplied the filling station on the tract until the Whartenbys closed the station in September, 1946; but, the evidence is clear and undisputed that, when Gilbert F. Willard (joined as a defendant herein) purchased the tract on July 28, 1950, there were no pumps or "filling station equipment" on the tract, the abstract of title to the tract did not show the lease, and defendant Willard had no knowledge of it. As will become apparent from our subsequent discussion, we think it unnecessary to resolve the issue of credibility raised by the sharply-conflicting testimony as to whether Willard *thereafter* learned of the lease during the period of his ownership. "Right after" he purchased the tract, Willard leased a portion of it to one Norman Gast; and, under "a reseller's contract" with Gast, defendant Hall in-

stalled storage tanks, two pumps and some signs on the tract and supplied Phillips "66" products to Gast, who operated a filling station thereon from August 11, 1950, until he "went broke" about June 30, 1951.

When plaintiff purchased the tract from defendant Willard on May 15, 1952, a cafe and package liquor store were being operated on the tract, but the filling station was not in operation. The only description of the unused station equipment then on the tract came from plaintiff who said that there were "two abandoned pumps at the place," which "were broken down, doors off of them" and "weren't in condition to work," that there were "a couple of light globes, they were off," and that there was "a Phillips sign * * * at the other end of the property." At the time of his purchase, plaintiff was informed by Willard that Hall owned the filling station equipment on the tract. However, Willard also told plaintiff that he (Willard) had asked Hall "to come get those pumps"; and, in response to plaintiff's specific inquiry as to whether "Hall had any kind of lease whatsoever," Willard had replied, "No, he has not." The abstract of title still did not show the lease, and the conveyance by Willard to plaintiff made no reference thereto. Plaintiff first learned of the lease about two months after the date of his purchase of the tract, when defendant Hall notified plaintiff of his (Hall's) intention to enforce the lease. Upon the foregoing state of facts, the trial court found that plaintiff "had no actual knowledge or constructive notice of the lease" and that "the lease is not binding" upon the tract. Defendant Hall appeals.

The first issue is as to whether plaintiff, a subsequent purchaser of the tract, is charged with constructive notice of the lease by reason of its recordation on September 20, 1941. Plaintiff's position is that, for the reason (inter alia) that the acknowledgment was incomplete and insufficient, the lease was not entitled to record and that, therefore, recordation thereof did

not impart constructive notice. The "acknowledgment" on the lease consists of the simple statement "Subscribed and sworn to before me this the 15th day of August, 1941," followed by the signature (*without seal attached*) of one "B. F. St. Clair," whose official status or position (if any) is not suggested and who remains utterly unidentified either in the lease or in the record before us.

We quickly recognize that the language of Section 442.210 (including the forms of acknowledgment which "may be used in * * * written instruments affecting real estate") is permissive and not mandatory,[1] and we heartily endorse the salutary principle, which has found application in a variety of circumstances,[2] that

substantial compliance with statutory provisions pertaining to acknowledgments will suffice.[3] But, although the law requires nothing more than such substantial compliance, it is satisfied with nothing less.[4] And, since the power to take acknowledgments is derived from the statutory provisions pertaining thereto and acknowledgments may be taken only by a person designated by statute [1 C.J.S., Acknowledgments, § 41, p. 815; 1 Am.Jur., Acknowledgments, Section 49, p. 333], we do not impose "hypercritical requirements of technical nicety" [McClure v. McClurg, 53 Mo. 173, 175] in concluding, as we do, that "no rational liberality of construction can cure" [Cabell v. Grubbs, 48 Mo. 353, 357] the patent defects in the "acknowledgment" to the lease in the instant case, which does not

1. Strother v. Barrow, 246 Mo. 241, 257, 151 S.W. 960, 965; Gross v. Watts, 206 Mo. 373, 393, 104 S.W. 30, 36; P. R. Sinclair Coal Co. v. Missouri-Hydraulic Mining Co., Mo.App., 207 S.W. 266, 267 (1).

2. Thus, a certificate showing that the acknowledger "personally appeared" constitutes substantial compliance with the statutory provision [Section 442.210] that the certificate "shall state" that the acknowledger was "personally known" [Warder v. Henry, 117 Mo. 530, 539, 23 S.W. 776, 778(1); Wilson v. Quigley, 107 Mo. 98, 17 S.W. 891; Hughes v. Sloan, 102 Mo. 77, 14 S.W. 660, 661(2), 15 S.W. 756]; a certificate is not insufficient for failure to include the recital, found in the statutory form [Section 442.210], that the acknowledgers executed as their "'free act and deed'" [Gross v. Watts, supra, 104 S.W. loc. cit. 36(4)]; a certificate showing acknowledgment by a subscribing grantor named in a deed, but not in the certificate, is not void [Wilcoxon v. Osborn, 77 Mo. 621, 626(1)]; a description of the certifying officer as recorder rather than as circuit clerk does not invalidate a sheriff's deed required to be certified under seal of the court by the clerk thereof [Section 513.285], where the reviewing court can take judicial notice that the same person fills both offices [Owen v. Baker, 101 Mo. 407, 413, 14 S.W. 175, 177(3)]; designation of the certifying officer's status as a notary public by the initials "N.P." is sufficient, where his notarial seal is affixed [Williams v. Lobban, 206 Mo. 399, 407,

104 S.W. 58, 59(1)]; a notary's failure to certify when his term of office will expire does not invalidate his certificate [Kansas City & S. E. Ry. Co. v. Kansas City & S. W. Ry. Co., 129 Mo. 62, 68, 31 S.W. 451, 453; Brown Mfg. Co. v. Gilpin, 120 Mo.App. 130, 134, 96 S.W. 669(3); Baskowitz v. Guthrie, 99 Mo. App. 304, 308, 73 S.W. 227, 228(1)]; a notary's certificate is not invalid for failure to mention his notarial seal therein, where the seal is affixed [Dale v. Wright, 57 Mo. 110, 113]; and, depositions authenticated by a notary of a sister state but not attested by his seal should not be suppressed where notary's official character and signature are shown by an appended certificate of a circuit clerk [Gharst v. St. Louis Transit Co., 115 Mo.App. 403, 91 S.W. 453]. But, as to effect of omission of seal on a sheriff's deed, see Hammond v. Coleman, 4 Mo.App. 307, 312(1); and, as to effect of certification under "private seal," see Geary v. City of Kansas, 61 Mo. 378.

3. Howard County v. Snell, 349 Mo. 386, 394–395, 161 S.W.2d 238, 242(3); Mathews v. O'Donnell, 289 Mo. 235, 261, 233 S.W. 451, 456(2); City of Kansas v. Hannibal & St. J. R. Co., 77 Mo. 180, 185; McClure v. McClurg, 53 Mo. 173, 175; 1 C.J.S., Acknowledgments, § 91a, p. 851; 1 Am.Jur., Acknowledgments, Section 74, p. 344.

4. Hughes v. Morris, 110 Mo. 306, 311, 19 S.W. 481, 482; annotation 25 A.L.R.2d 1124, 1131; annotation 29 A.L.R. 919, 921.

even indicate whether the individual purporting to take such "acknowledgment" in 1941 was a person then authorized so to do. Section 3408, RSMo 1939. Lacking an acknowledgment substantially complying with statutory requirements, the lease was not entitled to record [see Sections 442.380 and 59.330(1)], and recordation thereof did not impart constructive notice under Section 442.390 to plaintiff, a subsequent purchaser for value.[5]

■ Nevertheless, defendant Hall contends that recordation of the lease on September 20, 1941, imparted constructive notice to plaintiff under Sections 490.340 and 490.360. Although Section 490.360 simply states that, under the conditions therein outlined, the record "shall be prima facie *evidence* of * *execution* * * *, genuineness* and *time of record*" [consult Wells v. Pressy, 105 Mo. 164, 181, 16 S.W. 670, 674], "seems designed to provide a species of secondary evidence, *and has no reference to the question of notice*" [Muldrow v. Robison, 58 Mo. 331, 345], the language of Section 490.340 [6] would seem, at first blush, to support Hall's contention. (All emphasis herein is ours.) But, since application of this statute "to all instruments, regardless of the time of their being executed or recorded" would be "out of harmony with many other provisions of the statute[s] on this subject" [Williams v. Butterfield, 182 Mo. 181, 188, 81 S.W. 615, 618], investigation of the legislative history and judicial interpretation of Section 490.340 becomes appropriate. The first portion of this statute [under which "the *record* imparts notice", as distinguished from the latter portion, under which "the *instrument* imparts notice" (German-American Bank v. Carondelet Real-Estate Co., 150 Mo. 570, 577, 51 S.W. 691, 693)], in substantially its present language, was enacted first in 1847 [Laws of 1847, p. 95] as Section 8 of "an act to quiet vexatious land litigation" and thereafter, with unimportant modifications, was carried through the statutory revisions of 1855, 1865 and 1879. RSMo 1855, p. 731, Section 46; RSMo 1865, p. 582, Section 35; Section 2305, RSMo 1879. Recognizing the well-established principle that inclusion of an existing law in a statutory revision operates only as a continuance of its existence and not as a new enactment and that such law must be construed with reference to other statutes as of the date of its original enactment,[7] our Supreme Court in 1870

---

5. Heintz v. Moore, 246 Mo. 226, 232, 151 S.W. 449, 450(2); Williams v. Butterfield, 182 Mo. 181, 185, 81 S.W. 615, 617 (1, 2); German-American Bank v. Carondelet Real-Estate Co., 150 Mo. 570, 576, 51 S.W. 691, 692(3); Bishop v. Schneider, 46 Mo. 472, 480(2); Stevens v. Hampton, 46 Mo. 404, 407–408; General Theatrical Enterprises v. Lyris, Mo. App., 131 S.W.2d 874, 878(1); Drzewiecki v. Stock-Daniel Hardware Co., Mo, App., 293 S.W. 441, 445. Consult also State ex rel. and to Use of Crites v. Short, 351 Mo. 1013, 1016, 174 S.W.2d 821, 822(1); State v. Page, 332 Mo. 89, 58 S.W.2d 293, 295; Finley v. Babb, 173 Mo. 257, 264, 73 S.W. 180, 182; annotation 19 A.L.R. 1074.

6. "All records heretofore made by the recorder of the proper county by copying from any * * * instrument of writing, whereby any real estate may be affected * * *, that has neither been proved nor acknowledged, or which has been proved or acknowledged, but not according to the law in force at the time the same was recorded, shall hereafter impart notice to all persons of the contents of such instruments; and hereafter, when any such instrument shall have been so recorded for the period of one year, the same shall thereafter impart notice to all persons of the contents of such instruments, and all subsequent purchasers * * * shall be deemed to purchase with notice thereof."

7. Section 1.120; Miller v. Boulware, 267 Mo. 487, 184 S.W. 1148; Timson v. Manufacturers Coal & Coke Co., 220 Mo. 580, 592, 119 S.W. 565, 567; State ex rel. Frisby v. Stone, 152 Mo. 202, 210, 53 S.W. 1069, 1071; Dart v. Bagley, 110 Mo. 42, 52–53, 19 S.W. 311, 313; State ex rel. Attorney General v. Heidorn, 74 Mo. 410, 412; City of Cape Girardeau v. Riley, 52 Mo. 424, 429; Dillbeck v. Johnson, 232 Mo.App. 743, 122 S.W.2d 412, 415(2).

pointed out in Bishop v. Schneider, 46 Mo. 472, 482, that what is now the first portion of Section 490.340 derived "no additional force or power" by reason of its inclusion in the statutory revision of 1865, commented (loc. cit. 481) that "(i)t is hardly to be supposed that the Legislature intended by this section to repeal, nullify, and render nugatory the whole law in reference to the essential elements of acknowledgments and recording," stated that "when we look at the history of the enactment, its scope and tenor, we find clearly that no such intention prevailed," and concluded (loc. cit. 482) that this statute "applies to all conveyances made previous to the taking effect of the statutes of 1855,[8] and no further."[9]

The latter portion of what is now Section 490.340 was added and, in essential particulars, this statute assumed its present form in 1887, when Section 2305, RSMo 1879, was repealed and a new section was enacted in lieu thereof [Laws of 1887, p. 183], which, with trivial changes, was carried through the statutory revisions of 1889, 1899 and 1909. Section 4864, RSMo 1889; Section 3118, RSMo 1899; Section 6313, RSMo 1909. The act of 1887 was passed for "the obvious purpose of extending protection to instruments recorded in the period between the passage of the

act of 1847 [Laws of 1847, p. 95] and one year before the passage of the act of 1887"[10] [German-American Bank v. Carondelet Real-Estate Co., supra, 51 S.W. loc. cit. 693] and, as was held in 1904, had "application only to * * * instruments affecting real estate, executed and recorded one year prior to the taking effect of the act as amended in 1887." Williams v. Butterfield, supra, 81 S.W. loc. cit. 617.[11]

■ In 1913, an act was passed and approved repealing Section 6313, RSMo 1909, and enacting in lieu thereof a new section in precisely the same language [Laws of 1913, p. 345] which, without change, was carried through the statutory revisions of 1919 and 1929. Section 5368, RSMo 1919; Section 1681, RSMo 1929. In 1932, our Supreme Court "assumed" that, if interpretation of the act of 1913 had been necessary to determination of the case at hand (and it was not), that act would have been interpreted "in accord with the former decisions", i. e., as limited in its operation to instruments recorded not less than one year prior to its effective date in 1913. Miller v. Proctor, 330 Mo. 43, 50, 49 S.W.2d 84, 86. And, in 1939, an act was passed and approved repealing Section 1681, RSMo 1929, and enacting in lieu thereof a new section with minor changes in language

8. 1855, when minor changes were made in this statute, rather than 1847, when it was enacted originally, because, in the statutory revision of 1855, the Legislature declared that "(a)ll acts of a public, general and permanent nature, revised at the present session of the General Assembly, * * * shall be taken and construed as repealing the acts in force at the commencement of the present session * * *, so revised." RSMo 1855, p. 1026, Section 20. See State ex rel. Clover v. Ladies of the Sacred Heart, 99 Mo. 533, 541, 12 S.W. 293, 295, 6 L.R.A. 84; Fairchild v. Masonic Hall Ass'n, 71 Mo. 526, 533.

9. See also Gatewood v. Hart, 58 Mo. 261; Ryan v. Carr, 46 Mo. 483, 484; Stevens v. Hampton, supra, 46 Mo. loc. cit. 408; Campbell v. Laclede Gas Light Co., 84

Mo. 352, 362, affirmed 119 U.S. 445, 7 S.Ct. 278, 30 L.Ed. 459.

10. The act of 1847 applied to "The records *heretofore* made by the recorder * * *." [Laws of 1847, p. 95] and the acts of 1887 and 1913 to "All records made by the recorder * * * *one year before this act takes effect*, * * *." [Laws of 1887, p. 183; Laws of 1913, p. 345], while the last enactment in 1939 reverted to the language of the original act, "All records *heretofore* made by the recorder * * *." Laws of 1939, pp. 411, 412.

11. See also Geer v. Missouri Lumber & Mining Co., 134 Mo. 85, 94, 34 S.W. 1099, 1100 (1896); Williams v. Butterfield, 214 Mo. 412, 423, 114 S.W. 13, 16 (2) (1908); Fowles v. Bentley, 135 Mo. App. 417, 434–435, 115 S.W. 1090, 1096–1097 (3) (1909).

[Laws of 1939, p. 411], which, without subsequent repeal and reenactment, was carried into the statutory revisions of 1939 and 1949. Section 1845, RSMo 1939; Section 490.340, RSMo 1949, V.A.M.S. From the foregoing, it is apparent that this statute has been interpreted consistently as one of repose [German-American Bank v. Carondelet Real-Estate Co., supra, 51 S.W. loc. cit. 693], that Section 490.340 could not be applicable to instruments recorded *after* the effective date of the last reenactment in 1939, and that recordation of the lease in the instant case in 1941 did not impart *constructive* notice under Section 490.340 to plaintiff, a subsequent purchaser for value.

Finally, defendant Hall asserts that plaintiff's knowledge, when he purchased the tract, that Hall owned the filling station equipment thereon should have provoked further investigation which would have disclosed existence of the lease, and that, therefore, plaintiff is chargeable with *actual* notice thereof. It is true that, as our courts have reiterated many times, notice is regarded in law as actual where the person sought to be charged therewith either knows of the existence of the particular fact in question or is conscious of having the means of knowing it, even though such means may not be employed by him;[12] and that, since notice does not mean positive information brought directly home to the person sought to be affected thereby, whatever fairly is sufficient to put an ordinarily prudent person

on inquiry constitutes notice to him of such facts as would be disclosed by reasonable pursuit and proper inquiry.[13] For, justice is not so indulgent as to encourage one to shut his eyes to circumstances which would excite the zetetic impulse in an ordinarily prudent individual [Drey v. Doyle, 99 Mo. 459, 469, 12 S.W. 287, 289] or to throw away the key to the door of exploration through which the facts reasonably might be ascertained [Barrett v. Davis, 104 Mo. 549, 561, 16 S.W. 377, 380; James v. Hutchinson, Mo.App., 211 S.W.2d 507, 511]; and, from early times, our courts "have always recognized that the still small voice of suggestion, emanating as it will from contiguous facts and surrounding circumstances, pregnant with inference and provocative of inquiry, is as potent to impart notice as a presidential proclamation, or an army with banners." Connecticut Mut. Life Ins. Co. v. Smith, 117 Mo. 261, 292–293, 22 S.W. 623, 629; Adams v. Gossom, 228 Mo. 566, 583, 129 S.W. 16, 21.

■ However, one is put on inquiry and charged with notice of the facts which would be disclosed thereby, only when " 'the inquiry becomes a duty, and the failure to make it a negligent omission' " [Laughlin v. Findlay, 324 Mo. 1021, 1024, 25 S.W.2d 464, 465(1)];[14] or, as otherwise stated, " '(w)here there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge.' " [15] Whether the circumstances are sufficient to give rise to a duty

12. Golden v. National Utilities Co., 356 Mo. 84, 93, 201 S.W.2d 292, 297; Lee & Boutell Co. v. C. A. Brockett Cement Co., 341 Mo. 95, 116, 106 S.W.2d 451, 460; Crane v. Liberty Foundry Co., 322 Mo. 592, 617, 17 S.W.2d 945, 957; Weed v. American Car & Foundry Co., 322 Mo. 137, 145, 14 S.W.2d 652, 655; Taaffe v. Kelly, 110 Mo. 127, 137, 19 S.W. 539, 541; Mason v. Black, 87 Mo. 329, 342; Rhodes v. Outcalt, 48 Mo. 367, 370; Abbe v. Justus, 60 Mo.App. 300, 308.

13. State Bank of St. Louis v. Frame, 112 Mo. 502, 512–513, 20 S.W. 620, 623; Meier v. Blume, 80 Mo. 179, 184; Bar-

rickman v. National Utilities Co., Mo. App., 191 S.W.2d 265, 269; Whitecotton v. Wilson, Mo.App., 197 S.W. 168, 171(10); Lakeman v. North Missouri Trust Co., 147 Mo.App. 48, 62, 126 S.W. 547, 551; Edwards v. Missouri, K. & E. Ry. Co., 82 Mo.App. 96, 100(1).

14. See also Roan v. Winn, 93 Mo. 503, 511, 4 S.W. 736, 738; Leavitt v. La Force, 71 Mo. 353, 356; 66 C.J.S., Notice, § 11b(4) (b), p. 646; 39 Am.Jur., Notice and Notices, Section 12, loc. cit. 240–241.

15. Weed v. American Car & Foundry Co., supra, 14 S.W.2d loc. cit. 655; Crane

of further inquiry is ordinarily a question of fact[16] [at least where the evidence is conflicting or is such that more than one inference of fact might be drawn therefrom (Merrill on Notice, Vol. 1, Section 64, p. 61)], frequently fraught with appreciable difficulty and always determinable in the light of the circumstances of the particular case under consideration;[17] and whether, when one is put on inquiry, the exercise of common prudence and ordinary diligence [Edwards v. Carondelet Milling Co., 108 Mo.App. 275, 287, 83 S.W. 764, 768; Kitchen v. St. Louis, K. C. & N. Ry. Co., 69 Mo. 224, 265] in further investigation would have led to discovery of the information, knowledge of which is sought to be charged, likewise usually becomes a question of fact.[18]

■ Being mindful that one of these questions of fact necessarily was found in favor of plaintiff [Section 510.310(2); Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 786(3), and cases there cited] and that, in this court-tried case, "(t)he judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses" [Section 510.310(4); Staples v. O'Reilly, Mo.App., 288

S.W.2d 670, 677(15), and cases there cited], we would not be inclined, upon the record before us, to disagree with the finding of the capable trial judge that plaintiff did not have actual notice of the lease. However, we need not and do not rest disposition of the case on this basis alone, for, on the *undisputed* testimony, defendant Willard, who was plaintiff's immediate predecessor in title, acquired the tract on July 28, 1950, as a bona fide purchaser for value without notice, either actual or constructive, of the lease. "(I)t is a commonplace of the law of real property that an innocent purchaser for value takes the title discharged of secret outstanding equities * * * not of record, and that, having a good title himself, he can transfer one to a grantee who even had notice"[19] [subject only to the exception that the title may not be conveyed, free from such equities, to a *former* owner charged with notice (McDaniel v. Sprick, 297 Mo. 424, 249 S.W. 611, 616–618(5)], the classic statement of the reason for the rule, in the words of Chancellor Kent, being " 'to prevent a stagnation of property, and because the first purchaser, being entitled to hold and enjoy, must be equally entitled to sell.' "[20] Thus, the title to the tract being clear of "silent, unknown equities"

v. Liberty Foundry Co., supra, 17 S.W.2d loc. cit. 957–958; Shaw v. Butterworth, 327 Mo. 622, 631, 38 S.W.2d 57, 62; Golden v. National Utilities Co., supra, 201 S.W.2d loc. cit. 297.

16. Drey v. Doyle, 99 Mo. 459, 468, 12 S.W. 287, 289; Muldrow v. Robison, 58 Mo. 331, 350, 352; Musick v. Barney, 49 Mo. 458, 460; Voelpel v. Phoenix Mut. Life Ins. Co., Mo.App., 183 S.W. 679, 681; Hill v. Tissier, 15 Mo.App. 299, 306(3).

17. 66 C.J.S., Notice, § 11b(4) (a), p. 645; 39 Am.Jur., Section 15, p. 241; Merrill on Notice, Vol. 1, Section 65, loc. cit. 67–68.

18. Voelpel v. Phoenix Mut. Life Ins. Co., supra, 183 S.W. loc. cit. 681; United States v. Certain Parcels of Land, etc., D.C.Cal., 85 F.Supp. 986, 1002(26); Pflueger v. Hopple, 66 Idaho 152, 156 P. 2d 316, 318(6); Northwestern Portland

Cement Co. v. Atlantic Portland Cement Co., 174 Cal. 308, 163 P. 47, 49(3).

19. Hendricks v. Calloway, 211 Mo. 536, 559–560, 111 S.W. 60, 66(10). To the same effect, see Bradford v. Davis, Mo., 219 S.W. 617, 618(1); Lemay v. Poupenez, 35 Mo. 71, 76; Halsa v. Halsa, 8 Mo. 303, 308; Hellweg v. Bush, 228 Mo. App. 876, 880, 74 S.W.2d 89, 92(2); Fowles v. Bentley, supra, 115 S.W. loc. cit. 1097(4); Crow v. Andrews, 24 Mo. App. 159, 164(1); 92 C.J.S., Vendor & Purchaser, § 360, p. 295; 55 Am.Jur., Vendor and Purchaser, Section 759, p. 1118; annotation 63 A.L.R. 1362.

20. Funkhouser v. Lay, 78 Mo. 458, 465; Finley v. Babb, supra, 73 S.W. loc. cit. 183; Hellweg v. Bush, supra, 74 S.W.2d loc. cit. 92; Bray v. Campbell, 28 Mo. App. 516, 520. See also McDaniel v. Sprick, 297 Mo. 424, 249 S.W. 611, 616; Craig v. Zimmerman, 87 Mo. 475, 478–479.

when defendant Willard purchased in 1950 remained clear thereafter [Bradford v. Davis, Mo., 219 S.W. 617, 618] and so descended to plaintiff, a purchaser for value, irrespective of whether he had actual notice of the lease at the time of his acquisition.

The judgment of the trial court should be and is affirmed.

McDOWELL, P. J., and RUARK, J., concur.